[Civil No. 4710. Filed December 18, 1944.]

[154 Pac. (2d) 517.]

# BESSIE PARKER, Appellant, v. HOWARD GENTRY, Appellee.

Mr. Wm. P. Lufty and Mr. Herbert Watson, for Appellant.

Messrs. Jennings and Tenney, for Appellee.

McALISTER, C. J.—Howard Gentry brought an action to quiet the title in himself to lot 4, Sparks tract, according to the records in the office of the county recorder of Maricopa County. The defendant, Bessie Parker, answered, denying that plaintiff was the owner of said property and alleged that she owned the fee simple title to it, and that any claim on the part of plaintiff, Howard Gentry, was inferior and subordinate to hers and prayed for a decree quieting the title to said property in herself.

The plaintiff based his claim to it upon a deed dated October 1, 1941, given by Bessie Parker to him, and the defendant based her claim to the property upon a later deed, acknowledged by Howard Gentry on July 17, 1942, at Prescott, and mailed to her in Phoenix from that point. The evidence shows that Bessie Parker first obtained title to it in 1929, from one Lee Comer; that she mortgaged it to the Home Owners Loan Corporation in 1933, and made the payments on the mortgage; and that there is still due thereon around $1500.

On July 1, 1942, Howard Gentry had gone to the Veterans' Hospital at Whipple Barracks in Prescott for an operation. He was suffering from a broken appendix and blood poisoning. It appears that his physician told him that his recovery was very doubtful, though after many days he did get over it. Some days following the operation the defendant, accompanied by Mary Bess Parker, went to the hospital to see Mr. Gentry. Mary Bess Parker was the daughter of Mrs. Parker's husband by a former wife and according to plaintiff he had promised the child's

father, at the time of his death, he would take care of the little girl who was then a very small child. While at the hospital, notwithstanding his serious condition, they discussed the ownership of lot 4, Sparks tract, and according to the testimony of the plaintiff the following was said in the conversation:

" . . . there was also brought up the subject of Lot Four of the Sparks Tract, which this argument is over, and I suggested—she asked about that, and I suggested that she go to work and have this deed made out and in the event that I die that she could record that; otherwise, then she could give this back; and she agreed to that. She went to Mr. Langmade and had the two deeds made out that way, and they came up, and there was also a letter at the time she sent these. She went back to Phoenix in the meantime after we talked this over. She was there maybe a couple or three days, and we talked this over and finally decided that was the thing to do, so she went back and got these two deeds made by Mr. Langmade and sent them up and I signed it; and there was also a letter accompanying these deeds, and she stated in there—and she stated in there, 'I am sending you the two deeds. You can do as you like, but in the event that you sign the deed to Lot Four,' the tract that is involved in this lawsuit, 'the deed will be kept and not recorded until after your death.' "

The two deeds referred to in this testimony were, one covering a piece of property owned by the plaintiff on East Van Buren Street, which he deeded to Mrs. Parker so that she could sell it and raise money to pay off for him some expenses that he had incurred in connection with running the home, that deed was recorded by her promptly as Mr. Gentry advised; the other deed was the one covering lot 4, Sparks tract, which he signed and forwarded to her with the understanding that she would not record it unless his sickness resulted fatally, and that she would return it to him in case he recovered. However, she did record

it on November 16, 1942, some months after his recovery.

Gentry testified that the letter Mrs. Parker sent up with these two deeds he kept in his files in the hospital until he returned home when he put it in a letter file in a steel cabinet in his room. But this file was unlocked and the letter, along with a number of other valuable papers, including checks and everything pertaining to lot 4, that happened to be in the file, were missing. The file had been completely ransacked.

There was a great deal of testimony in the record bearing on the property and their relations, but only that that throws light on the delivery of the deed to lot 4, Sparks tract, dated July 17, 1942, is important.

The case was submitted to a jury upon the following interrogatory:

"Was the deed from Howard Gentry to Bessie Parker given on the 17th day of July 1942, intended as an absolute conveyance of the property described in the complaint?"

The jury answered this interrogatory "No."

Notwithstanding this verdict, the court refused to give the plaintiff judgment on it immediately, reserving the right to rule until later. The defendant filed a motion for judgment notwithstanding the verdict and inasmuch as the verdict of a jury in an equity case is advisory only, and the court at first thought the deed was an absolute conveyance of title, this motion was granted.

The plaintiff then filed a motion for a new trial and this was granted and the appeal of Bessie Parker is from this order.

The plaintiff makes two assignments, but it is necessary to consider only one and that is that the court erred in setting aside the judgment in favor of the defendant and granting a new trial. The motion

was made upon a number of grounds and it does not appear upon which particular ground the court acted in granting it. However, if it is good for any reason assigned in the motion the order should be sustained. Among other things the motion specifies that the judgment is not supported by the evidence in the case, but is contrary to it. This involves the validity of the deed of July 17, 1942, sent by Gentry from Prescott to defendant in Phoenix. The defendant contends that it was a good and sufficient deed and had the effect of conveying to her the absolute title to lot 4, Sparks tract. It is her contention that when she received this deed from the grantor in Prescott, through the mail, it became immediately effective and under no circumstances can "parol evidence as to the intent of the maker of a deed" be admitted. *Miller* v. *Miller,* 91 Kan. 1, 136 Pac. 953, L. R. A. 1915A, 671, Ann. Cas. 1917A, 918. A good statement of the rule, according to the defendant, is found in the following language of 20 Am. Juris., par. 1102:

"The intention of the parties as evidenced by the legal import of the language of the written contract cannot be varied by parol proof of a different intention, in the absence of some equitable ground for intervention, such as mistake, fraud, or surprise. Parol evidence is not admissible to show the intention of a party as to the character of an instrument which is so plain and unambiguous that its meaning can be ascertained from reading it. . . . This principle is applicable to all classes of written contracts, including deeds."

Defendant calls our attention also to the following statement in syllabus 2 of *Hyde* v. *City of Altus,* 92 Okl. 170, 218 Pac. 1081.

"Where a warranty deed, absolute on its face, has been executed and delivered, which does not contain any reservation of title, and no limitation or condition appears therein, the grantor cannot introduce

parol, contemporaneous evidence to vary the terms of said deed."

Mrs. Parker also argues that "parol evidence is inadmissible to add to, vary or change, the terms of a deed not attacked on the ground of mistake or fraud."

 Against the abstract proposition of law that you cannot vary the terms of a written instrument by parol, nothing can be said. There was not, however, any effort made to alter, vary, or change the terms of the deed of July 17, 1942, by parol, but the question is whether that deed was or was not delivered, for as said in 8 R. C. L. p. 973, par. 45:

"A delivery is essential to the validity of a deed. It is the final act which consummates the deed, is as necessary as the seal or signature of the grantor, and without it all other formalities are ineffectual and the deed is void *ab initio*, . . . "

The question whether a deed is delivered may be proved by parol, and the following statement in *Seibert* v. *Seibert*, 379 Ill. 470, 41 N. E. (2d) 544, 547, 141 A. L. R. 299, as to what constitutes delivery in a case of this kind is:

"It is settled that to constitute a conveyance there must be not only a delivery of the deed by the grantor but also an acceptance by the grantee and *it must affirmatively appear that the grantor's intention was that the deed should pass title at the time and that he should lose all control of it.* (Citing cases.) It follows that placing a deed in the hands of a grantee does not constitute delivery where it is shown the intention of the parties was that it was not to become operative immediately . . . ."

See also: *Joslin* v. *Goddard*, 187 Mass. 165, 72 N. E. 948; *Hotaling* v. *Hotaling*, 193 Cal. 368, 224 Pac. 455, 56 A. L. R. 734; *Gaylord* v. *Gaylord*, 150 N. C. 222, 63 S. E. 1028; *Bunn* v. *Stewart*, 183 Mo. 375, 81 S. W. 1091; *Elliott* v. *Murray*, 225 Ill. 107, 80 N. E. 77;

*Elliott* v. *Merchants Bank & Trust Co.*, 21 Cal. App. 536, 132 Pac. 280; *Kenney* v. *Parks*, 137 Cal. 527, 70 Pac. 556; *Taylor* v. *Taylor*, 79 Colo. 487, 247 Pac. 174. In the annotation to 56 A. L. R. 734 and also the annotation in 141 A. L. R., beginning at 305, are found many decisions on the point.

Gentry admitted that this deed was mailed by him without any instructions accompanying it, but he testified it was sent in accordance with the conversation he had with the grantee when she visited him in the hospital a few days before that. His testimony was that he instructed her to return to Phoenix and have Mr. Langmade draw up the deed, and also a deed to some other property, and send them up to him and he would sign them. Seemingly she carried out these instructions and with the two deeds that Mr. Langmade had drawn, according to plaintiff, she forwarded a letter in which she said: "I am sending you the two deeds. You can do as you like, but in the event that you sign the deed to Lot Four, (the tract that is involved in this law suit) the deed will be kept and not recorded until after your death." Plaintiff instructed her to record the deed to the other property, which she did, and to withhold the deed to lot 4, Sparks tract, until the grantor was dead. But notwithstanding this direction as to the deed to lot 4, Sparks tract, she recorded it on November 16, 1942, several months after Gentry had recovered. This made no difference inasmuch as the rights of no third party had intervened.

The jury found that the deed was not given as an absolute conveyance, but the court, as it viewed the evidence at first, granted defendant's motion for judgment, notwithstanding the verdict, but upon further thought decided that the question was doubtful and ordered a new trial. Under these circumstances we feel that the court did not abuse its discretion but

was justified in granting the plaintiff's motion for a new trial.

The judgment is affirmed.

ROSS and STANFORD, JJ., concur.