430 P.2d 128

### UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Appellant,

v.

### OLDS BROS. LUMBER COMPANY, an Arizona corporation, W. A. Olds and Jane Doe Olds, his wife, J. W. Olds and Jane Doe Olds, his wife, Appellees.

No. 7847.

Supreme Court of Arizona,
In Banc.
June 30, 1967.

Rehearing Denied Sept. 19, 1967.

Moore, Romley, Kaplan, Robbins & Green, Phoenix, for appellant.

Head & Palmer, Prescott, for appellees.

BERNSTEIN, Chief Justice.

Appellant, plaintiff herein, sued appellees, defendants herein, in Navajo County Superior Court for damages allegedly due it under a "General Indemnity Agreement" in which defendants were indemnitors and plaintiff indemnitee. From an adverse verdict and judgment, the plaintiff took this appeal.

Defendants owned and operated a retail lumber and building supplies company in Winslow, Arizona. During the course of their business they had occasion to deal frequently with one Jack Reeder, a building contractor who purchased material for his construction jobs from defendants. With apparent intention of preserving their beneficial commercial relationship with Reeder, the defendants had agreed, on a number of occasions, to indemnify the plaintiff for any losses it might sustain as a result of posting performance bonds in the name of Jack Reeder on individual construction jobs. These early agreements which were individually executed, were designated "Special Indemnity Agreements" by the contracting parties.

On September 12, 1957 the plaintiff and defendant then decided to enter into what was titled a "General Indemnity Agreement." The basic substance of this more expansive contract is explained in its first three paragraphs, which read as follows:

"GENERAL INDEMNITY
AGREEMENT

THIS AGREEMENT made by the Undersigned in favor of UNITED STATES FIDELITY AND GUARANTY COMPANY (hereinafter called

the Surety), its successors and assigns, WITNESSETH:

WHEREAS, the Surety, at the special instance and request of the Undersigned and because of the promise of the Undersigned to execute this indemnity agreement, has assumed or may in the future assume suretyship on bonds or other obligations, in different penalties, of various dates, on behalf of any one or more of the Undersigned, the undersigned's subsidiary associated or affiliated companies, or

JACK V. REEDER, ALSO KNOWN AS J. V. REEDER AND JOHN V. REEDER dba REEDER CONSTRUCTION COMPANY

(any and all of the aforesaid being hereinafter called the Principal), and in favor of different obligees, any and all of which bonds and other obligations are made a part hereof, to all intents and purposes as if fully written herein; and

·Whereas, the Undersigned expressly agrees that the Surety's acceptance of the application, written or otherwise from a representative who is believed by the Surety in good faith to be an authorized agent of the Principal and the execution of any of such bonds and other obligations shall constitute in each instance a request from the Undersigned for the Surety to assume suretyship, both prior and subsequent to the execution of this agreement, including suretyship assumed by any continuation, extension, alteration or renewal of the original obligation or any new bond or obligation, and bring all and each of such bonds, obligations, continuations, extensions, alterations or renewals within the provisions of this agreement; * * * "

This continuing agreement was reached with the purpose of avoiding the time and effort expended in executing special indemnity agreements each time Jack Reeder was in need of a performance bond.

In reliance on this "General Indemnity Agreement" the plaintiff thereafter issued several performance bonds in the name of Jack Reeder, and sustained a resulting loss ·on one bond in the amount of $24,186.69. Plaintiff seeks· indemnification.

At trial, the defendants endeavored to show that the parties had orally agreed, concurrently with the execution of the General Indemnity Agreement, that the defendants would not be bound to indemnify the plaintiff for losses on any bond issued to Jack Reeder unless and until the plaintiff first notified and obtained the approval of the defendants. This oral evidence was relied upon to establish the foundation for their defense of "conditional delivery" of the indemnity agreement. In this respect defendants argued that since their approval had neither been sought nor given prior to the issuance·of the bond upon which the loss was sustained, they had no liability under the agreement. The defendants' further contention that their·signatures on the agreement had been obtained by fraud was also based on the alleged oral agreement. The defense of fraud, however, was stricken upon motion .at .trial.

The plaintiff on appeal contends that the evidence of· the alleged oral agreement should have been stricken from the record pursuant to its motion following dismissal of the fraud defense. Plaintiff maintains that the trial court's refusal in this respect constitutes reversible error.

■ It is firmly established that where an agreement is reduced to writing in such terms as to express a complete contract, evidence of a contemporaneous oral agreement relating to the same subject matter, varying, contradicting or enlarging the written agreement, is inadmissible, in the absence of an allegation of fraud or mistake. Brand v. Elledge, 101 Ariz. 352, 419 P.2d 531; Komarek v. Cole, 94 Ariz. 94, 381 P.2d 773; Lee v. Nichols, 81 Ariz. 106, 301 P.2d 1022; S. H. Kress & Co. v. Evans, 21 Ariz. 442, 189 P. 625.

■ The parol evidence rule, stated above, is not applicable, however, where there is no integration of the agreement or

contract. It may be proven by parol evidence, therefore, that a writing was never executed or delivered as a contract. Parker v. Gentry, 62 Ariz. 115, 154 P.2d 517; Brown v. First National Bank of Nogales, 44 Ariz. 189, 36 P.2d 174; Williston on Contracts, § 634 (3rd edition, 1961). Accordingly, a party may show by parol either that the contract, although signed by him, was never delivered or that there was merely a conditional delivery and that the condition has failed. Mapes v. Santa Cruz Fruit Packing Corp., 26 Wash.2d 145, 173 P.2d 182. "In so doing, the written terms of the contract are not varied by parol but the showing made is merely to the effect that the contract was never completely executed." Chicago Title and Trust Co. v. Cohen, 284 Ill.App. 181, 1 N.E.2d 717, 723.

 It is necessary to keep clearly in mind, however, that the parol evidence must be directed solely to the fact of delivery and to the conditions thereof, and that it may not operate to alter in any way the terms of the contract. Restatement, Contracts § 241 (1932); Yoder v. Nutrena Mills Inc., 8 Cir., 294 F.2d 505; Meadow Brook National Bank v. Bzura, 20 A.D.2d 287, 246 N.Y.S.2d 787; Mapes v. Santa Cruz Fruit Packing Corp., supra. Also, while oral testimony is admissible to prove that a contract, fully executed and unconditional on its face, had been delivered subject to a condition precedent, this proposition has no application to conditions subsequent. National Bank and Trust Co. of South Bend v. Becker, 38 Ill.App.2d 307, 187 N.E.2d 355; Security National Bank v. Pulver, 131 Minn. 454, 155 N.W. 641.

The issue then in the present case is whether the oral agreement establishes a condition precedent to delivery within the exception to the parol evidence rule. Assuming the oral condition in question to be, as defendants contend, a condition precedent rather than a condition subsequent, we are still called upon to examine the borderline separating the rule which forbids the admission of contemporaneous parol evidence to vary a writing and the rule permitting parol evidence to establish conditions upon which an instrument has been delivered. Although this line is a fine one, it is essential that it be carefully protected in order to give a continuing significance to the parol evidence rule.

In dealing with the above rule distinction in a case where the defendant contended that the mortgage then in question was delivered on a condition that it was not to be enforced against personal property, the Supreme Court of Iowa said:

"Nor can the contention be sustained as supporting the plea of *conditional* delivery. Concededly the mortgage was then and there delivered to the payees and was intended to go into effect so far as the real estate was concerned. The condition contended for was not to be precedent to delivery, but had relation to the enforcement of the instrument after delivery. A condition to delivery suspends for the time being the contract as a whole. It can have no effect to qualify or modify the terms of the contract as written. The performance of the condition must be precedent to the delivery. The case presented by the defendants is not one of conditional delivery at all. The gist of their contention is that the provisions of the mortgage were to be waived and qualified after delivery. * * * The district court properly rejected the evidence, so far as it sought to qualify the terms of the mortgage." (Emphasis in original) Farmers Savings Bank of Slater v. Weeks, 209 Iowa 26, 227 N.W. 508, 509.

In Travers-Newton Chautauqua System v. Naab, 196 Iowa 1313, 196 N.W. 36, 37, 32 A.L.R. 780, it was stated:

"* * * Delivery is largely a matter of intention. Where there is a condition precedent to the full legal delivery of a written instrument, the writing does not become effective until such condition has been complied with, and it may generally be proven by parol evidence that there was such a condition precedent to the

full legal delivery of the instrument and to its becoming effective. This rule is of necessity applied in cases where the written instrument itself is silent on the subject-matter of the condition precedent which it is sought to establish by parol. But, where the written instrument speaks on the very subject-matter of the condition precedent which it is sought to establish by parol, then a different rule must obtain. In such an instance, the writing itself is sought to be obviated or modified by proof of a contemporaneous parol agreement, and this cannot be done. * * *"

"Were the contract entirely silent on this subject-matter, it might well be said that a condition precedent of this character might be established, without doing violence to the parol evidence rule. In the instant case, however, the parties have bound themselves by providing in the contract in regard to the very subject-matter of a condition precedent to its validity. * * * The parties were all capable of making a contract. They bound themselves by apt terms, as they had a right to do. This action is not in equity to reform the instrument, but the appellants seek by parol to modify and change the provisions thereof, * * *"

That the modification of the written contract by oral agreement does not have to be a specific form of contradiction is evidenced by the following:

"* * * when the subject matter of an alleged condition precedent is dealt with in the written instrument, in any form, the condition may not be shown by parol evidence to be different from the manner in which it is expressed in the writing." Yoder v. Nutrena Mills, Inc., supra.

While a contracting party may prove an oral agreement to the effect that a written contract for the sale of goods is not to take effect unless local railroad cars are available for shipping within 10 days, he may not prove the same oral condition if the writing provides "delivery shall be made within thirty days" from the date of the writing, because there then would exist an inconsistency between the written and oral agreements which would render the oral agreement inoperative, Restatement of Contracts, Section 241, illustration, supra. Likewise a contracting party may not prove by reason of the parol evidence rule that a note was delivered upon an oral condition that no demand or payment would be made unless a certain mine was either sold or produced income from which the note could be paid (the oral provision being inconsistent with and contradictory to the absolute nature of the printed note), Meyer v. Armstrong, 49 Wash.2d 598, 304 P.2d 710; nor may he show that a written "unconditional guaranty" is subject to the condition that the obligee first obtain other primary guarantors, Meadow Brook National Bank v. Bzura, supra; or show by means of any oral agreement additions to the terms of a written financing contract whether they be in the form of condition precedents or not, Yoder v. Nutrena Mills, Inc., supra.

■ In the present case, the General Indemnity Agreement, the written transaction, specifically deals with the matter of when the guaranty obligation of the defendant will come into effect. The contract provides that an application by Jack Reeder for a performance bond "shall constitute in each instance a request from the Undersigned [defendants] for the Surety [plaintiff] to assume suretyship." The defendants do not attack the legal existence of the General Indemnity Agreement but rather attempt to prove by means of the oral agreement that the successive guaranty obligations do not, as the contract states, actually arise when Jack Reeder requests a new performance bond, but rather that they arise only after the plaintiff in addition notifies them of the request and obtains their permission to post a bond. Clearly, this parol testimony, introduced by the defendants over the objection of the plaintiff, altered the terms of the writings and varied their legal import. In fact the very nature of the condition is at odds with the entire purpose of the General Indemnity Agree-

ment which was to avoid the delay and trouble of reaching a new agreement every time Reeder needed a new performance bond. It is unnecessary therefore to enter into the maze of mirrors which characterizes the distinction between a condition precedent and a condition subsequent. When the parties have already considered in the written contract the very subject matter of the oral condition they are bound by the terms of that integration, the parol evidence rule so dictating.

Therefore, once the defense of fraud was dismissed, the plaintiff's motion to strike the parol evidence in question should have been granted. Because "[n]othing is more futile than calling a jury to determine a fact the existence of which is not susceptible of proof", Ford v. Luria Steel & Trading Corp., 192 F.2d 880, 882, we order that this cause be remanded to the trial court to enter judgment in favor of the plaintiff.

Judgment reversed.

UDALL and LOCKWOOD, JJ., concur.

STRUCKMEYER, Justice (dissenting).

I had thought it indisputable that a contract could be partly oral and partly written if the parties chose to contract in that fashion. See Crone v. Amado, 69 Ariz. 389, 214 P.2d 518. Here the defendants said they did and the jury found they did. But the majority say they may not. The simple facts of this case yield readily, upon analysis, to well-understood principles of law and point to an affirmance of the judgment.

The General Indemnity Agreement was on a printed form furnished by the plaintiff company and brought 200 miles from Phoenix to Winslow by W. W. Ridout, its bond superintendent, for signature by defendants. It was indefinite as to duration, having no clause or language fixing a time limit, but it provided, "Any of the undersigned shall have the right to request cancellation of this agreement, * * *." It was the defendants' evidence, the exclusion of which the trial judge first passed upon and which the jury accepted as true, that

Ridout "said he would call us each and every time before putting us on the bond and seek our approval." This collateral oral promise was obviously for the benefit of the defendants in that it would give them an opportunity to terminate the agreement by invoking the cancellation clause if Reeder, dba Reeder Construction Company, became financially shaky or ceased doing business with defendants. It was in reliance on the collateral promise that the written agreement was executed.

It should immediately be emphasized that the oral promise deals with a matter which was not dealt with at all in the written agreement. In this situation, the parol evidence rule has no application. The language used in Williston on Contracts, 3rd ed., 1961, § 636, is a lucid statement of the principle applicable.

> "The parol evidence rule assumes agreement upon the writing in question as a complete statement of the bargain, that is, as an integration. If the parties never adopted the writing as a statement of the whole agreement, the rule does not exclude parol evidence of additional promises." Id. at p. 1033.

In discussing the test for determining whether an oral agreement is separate and collateral so as to be admissible, Williston further states, in § 638, at page 1039 et seq.:

> "Two suggestions may be made to serve as a guide to the many decisions apparently often contradicting one another, before considering the subject in detail. First, that the test of admissibility is much affected by the inherent probability of parties who contract under the circumstances in question, simultaneously making both the agreement in writing which is before the court, and also the alleged parol agreement. The point is not merely whether the court is convinced that the parties before it did in fact do this, but whether parties so situated generally would or might do so. If that is true, the parole agreement is so far collateral and separate from the writing as to make it admissible."

This is in accord with Professor Wigmore who, in discussing "Partial Integration; General Test for Applying the Rule; 'Collateral Agreements,'" Evidence, 3rd ed., § 2430, says:

"In searching for a general test for this inquiry, three propositions at least are capable of being generally laid down:

"(1) Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto. In this respect the contract is between voluntary integration and intergration by law (post, § 2450). Here the parties are not obliged to embody their transaction in a single document; yet they may, if they choose. Hence it becomes merely a question whether they have intended to do so.

"(2) This intent must be sought where always intent must be sought (ante, §§ 42, 1714, 1790), namely, in the *conduct and language* of the parties and the *surrounding circumstances*. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con*, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place.

\* \* \* \* \* \*

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by most careful judges, and is in contrast with the looser and incorrect inquiry (post, § 2431) whether the alleged extrinsic negotiation contradicts the terms of the writing: \* \* \*." (Emphases in original.)

Corbin puts it this way:

"The question whether the parties have assented to a specific writing as a complete and accurate integration of the terms of their contract is always a question of fact. Generally, it seems to have been determined, or an affirmative answer assumed, by the court. Probably it is wise, in most cases, for the court to assume the burden of determining this issue of fact, although it is never wise to assume an affirmative answer. There must be many cases, however, in which the evidence of what the parties said and did, before and at the time of preparing or delivering a writing, is so

nearly equal in weight and credibility that the court will desire the aid of a jury's verdict. If so there is no law against getting such aid." 3 Corbin on Contracts, § 595, p. 571.

A few more facts place this litigation in its proper perspective. Jack Reeder, doing business as the Reeder Construction Company, used defendants as suppliers of his material. Defendants had previously entered into a number of special indemnity agreements on his behalf with the United States Fidelity and Guaranty Company. The General Indemnity Agreement was executed at the suggestion of the plaintiff, the United States Fidelity and Guaranty Company, as a convenience because, as James Olds testified:

> "When a contractor is going to bid on a job, most all of these have to be ready by a certain time or a certain date, that the price has to be in with the bid and most of them don't get the prices before the last hour, * * *. Then they would put this package together with the bond and price and give it to whoever it was calling for the bid."

It is, therefore, to use Williston's language, inherently probable that, after Ridout brought the printed form of the contract to Winslow and a question as to the duration of the contract arose, Ridout would agree to call the defendants "before putting" them "on the bond." This is exactly the type of promise the defendants would accept, as small businessmen, dealing in good faith and without the advice of attorneys.

As Wigmore says, the test used by the careful judge is whether the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. It must be again emphasized: There is here no provisions or reference made in the printed contract for termination by lapse of time or any provisions whatsoever for notification as to defendants' assumption of liability. The subject matter of the oral promise was not dealt with in the writing. I am, therefore, of the opinion that the trial judge properly left it for the jury's determination as a question of fact as to whether the promise was made.

It is at this point that I am in most violent disagreement with the majority, for it is here that they launch into a discussion of conditional delivery, a theory of the case, with which I am wholly unable to agree. First, this continuing agreement is plainly severable and divisible. Shadron v. Cole, 101 Ariz. 341, 419 P.2d 520. It was, in fact, executed to obviate the inconvenience of making separate agreements as the occasions arose. While there was continuing liability under the written agreement, each new bond written pursuant to it was separate and distinct and not dependent on any other act for its viability. The oral promise supplementing the written agreement to notify the defendants before writing each new bond is so obviously a condition precedent to liability on each divisible portion that it is ridiculous to labor the matter further.

Second, the simple resolution of this case is to acknowledge that which is obvious and which the jury found to be true, namely, that the General Indemnity Agreement was signed by the parties with the intention of being a binding contract *but with a further intention that the oral promise would be part of the contract.*

The contractural promises, including the oral promise, are mutual and dependent. (There is no other consideration except a recited consideration of one dollar.) As to mutual and dependent promises, the failure of one party to perform authorizes the other to rescind the contract, American Emigrant Co. v. Adams County, 100 U.S. 61, 25 L.Ed. 563, or he may treat the breach as terminating the contract.

> "Upon the breach of a contract, the party not at fault, ordinarily, has the choice of three remedies. (1) He may rescind, with the usual rights and duties of such an action. (2) He may refuse to recognize the breach and compel its performance. (3) He may treat the breach as terminating the contract and

sue for damages." Weatherford v. Adams, 31 Ariz. 187, 195–196, 251 P. 453, 455.

In this instance the defendants treated the contract as terminated and resisted the plaintiff's suit for damages.

Since the jury found the facts in favor of defendants as to this aspect of the case, it is apparent from what has been said that the judgment of the court below should be affirmed, and it is for this reason I dissent. It is to be recognized, however, that plaintiff-appellant has raised other asserted errors. As to these, since the majority did not enter into an examination of their merits, I find it unnecessary to express an opinion.

McFARLAND, V. C. J., concurs in this dissent.