786 P.2d 1010

Thomas M. THOMAS and Karen L. Thomas, husband and wife, Plaintiffs / Counter–Defendants / Appellees/ Cross–Appellants,

v.

William R. GOUDREAULT, and Sandra S. Goudreault, husband and wife, individually and as co-trustees of the Goudreault Living Trust, Defendants / Counter–claimants / Appellants / Cross–Appellees.

No. 1 CA–CIV 9633.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 10, 1989.

Review Denied Feb. 14, 1990.

Kalish & Forrester, P.C. by Marc Kalish, Phoenix, for plaintiffs/counter-defendants/appellees/cross-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Paul M. Miltonberger, John H. Westover and Mark W. Arnett, Phoenix, for defendants/counter-claimants/appellants/cross-appellees.

Holloway & Thomas, P.C. by James P. Lagatutta, Phoenix, for appellants/cross-appellees.

## OPINION

HAIRE, Judge, Retired.

This appeal involves a landlord-tenant dispute raising the following issues: (1) whether a landlord's violation of the duties of maintaining habitable conditions as required by the Arizona Residential Landlord and Tenant Act may give rise to damages for mental suffering, (2) whether the parol evidence rule was violated, (3) whether the tenants were entitled to damages for lost profits, (4) whether the trial court should have directed a verdict in favor of the landlord on the claim of retaliatory conduct, (5) whether the trial court properly granted a directed verdict in favor of the landlord on the tenant's negligence claim and (6) whether the trial court properly ruled that the landlord had no duty to repair fire damage or rebuild the premises after destruction of a portion of the residence by fire.

## FACTS AND PROCEDURAL HISTORY

In September, 1982, Thomas M. and Karen L. Thomas occupied a single-family residence in Scottsdale under a one-year lease from the owner, the Goudreault Living Trust, through its co-trustees, William R. and Sandra S. Goudreault. Before the expiration of the initial lease term, the parties entered into a second lease for a term of four years. During the course of their tenancy, the Thomases made numerous complaints concerning the condition of the premises which they used as a residence and from which they operated a bakery business. Many of the complaints involved the heating and the air conditioning system for the main house.

In November, 1984, the Goudreaults hired Jerry Schroeder to install a reconditioned Gas–Pac unit, a combined natural gas heating and electrical air conditioning system for the rental property. In April, 1985, the residence was substantially damaged by a fire that originated in the Gas–Pac unit. After some makeshift repairs were done to the house, the Thomases continued to live in it until August 31, 1985, at which time they surrendered possession.

During the course of the lease, the Thomases deducted various amounts from rent for sums that they had paid for maintenance of the property. At some point the Thomases tendered rent that the Goudreaults rejected because they considered it insufficient. Following the fire, the Thomases paid no further rent.

In July, 1985, the Thomases filed a five-count complaint against the Goudreaults in which they asserted a contractual claim for breach of lease and tort claims for bad faith breach of lease, intentional infliction of emotional distress, interference with business expectancies, and negligence. The Goudreaults filed an answer and counterclaimed for overdue rents and for conversion of certain property. The Thomases also filed a complaint against the repairman, Schroeder, for negligent installation and maintenance of the Gas–Pac unit, and against the Goudreaults for their negligent hiring of Schroeder. Schroeder filed, *in propria persona,* a general denial, but did nothing further in defense of the claim against him. The claims against Schroeder were eventually dismissed without prejudice.

The matter proceeded to a jury trial, and, after the Thomases rested their case, the trial court directed a verdict in favor of the Goudreaults on the Thomases' claims arising from the fire. At the close of all the evidence, the Goudreaults' counterclaim for conversion was withdrawn.

The jury returned a verdict in favor of the Goudreaults on the Thomases' tort claims for intentional interference with business expectancies and intentional infliction of emotional distress. The jury returned a verdict in favor of the Thomases on their claim for breach of the landlord's duties and found that the Goudreaults had acted in retaliation for the Thomases' complaints regarding the condition of the leased property. The jury also found in favor of the Goudreaults on their counterclaim for rent.

Judgment was entered against the Goudreaults for compensatory damages in the amount of $55,895 after allowing a set-off for rent. The court also awarded retaliatory damages of $2,050 pursuant to A.R.S. §§ 33–1367 and 33–1381, attorney's fees in the amount of $10,000 and taxable costs to the Thomases.

The Goudreaults filed a notice of appeal and the Thomases filed a notice of cross-appeal.

## DAMAGES FOR MENTAL SUFFERING

After instructing the jury on the duties of a landlord under the Arizona Residential Landlord and Tenant Act, A.R.S. § 33–1301 *et seq.,* (the Act) the trial court, over objection, gave the following instructions:

"If you find that the Goudreault defendants did not comply with their obligations as landlords, then, plaintiffs are entitled to recover damages they may have suffered as a result of that noncompliance. Those damages are limited to the following:

. . . .

"3. Compensation for mental suffering, anguish, discomfort or annoyance caused by the landlord's failure to maintain the leased property in the required condition. . . .

The Goudreaults argue that this instruction erroneously permitted the jury to award tort damages for breach of a landlord's statutory duties under the Act. They contend that the Act creates only contract remedies.

Before addressing the issue of tort recovery for violations of the Act, we first consider some procedural arguments raised by the Goudreaults. They contend that the claims the Thomases raised in connection with the Act sought only contract damages and note that the original complaint fails to claim damages for emotional distress except with respect to a specifically pleaded count for intentional infliction of emotional distress.

We find this argument unpersuasive because the pretrial statement clearly sets forth as a contested issue of fact and law whether the Goudreaults were liable in *tort* for any acts or omissions in connection with their duties as landlords and assuming such tort liability, what damages plaintiffs were entitled to recover. It is also clear from the discussion between court and counsel concerning motions for directed verdict that the Thomases sought damages in tort arising out of the breach of the landlord's duty under the Act.

In determining whether a tort or contract claim has been pled, the court must look to

the substance of the allegations, not the labels attached to them. *McClure v. Johnson*, 50 Ariz. 76, 86, 69 P.2d 573, 577 (1937). Further, the trial court granted the Thomases the right to amend Count II for bad faith breach of contract to tortious breach of a landlord's duties. There was no amendment. However, when issues not specifically raised in the pleadings are tried by express or implied consent of the parties, they will be treated as though they had been raised in the pleadings. Rule 15(b), Arizona Rules of Civil Procedure. The failure to formally amend pleadings will not affect the judgment based on competent evidence. *Electrical Advertising, Inc. v. Sakato*, 94 Ariz. 68, 381 P.2d 755 (1963).

We conclude that the record in this case, particularly the pretrial statement and the arguments made to the trial court in connection with motions for directed verdict and jury instructions, indicates that the right to recover tort damages for statutory violations was clearly an issue tried in this case.

Whether tort damages may be recovered for violations of the Act is a question of first impression in Arizona. The Goudreaults assert that the Act adds certain terms and conditions to a rental agreement as a matter of law creating contractual rather than tort liability. They note that the Act contains gap filler provisions for terms and conditions that may be missing in the rental agreement. *See, e.g.*, A.R.S. § 33-1314(B) (amount of rent); A.R.S. § 33-1314(C) (time and place of payment); and A.R.S. § 33-1314(D) (length of tenancy).

The remedy section of the Act makes no distinction between damages recoverable for the landlord's non-compliance with the rental agreement and the landlord's non-compliance with his obligation to maintain fit premises pursuant to the Act. *See* A.R.S. § 33-1361(B). The Goudreaults conclude that this indicates legislative intent that the same damages are available for breach of the statute as for breach of the rental agreement. They conclude that while tort liability may exist independently

from remedies available under the Act, the Act does not create duties, the violation of which imposes tort liability.

Oregon, like Arizona, has adopted the Uniform Residential Landlord and Tenant Act, and to date is the only jurisdiction that has addressed the precise issue before us. *See generally* Annot. 6 A.L.R. 4th 528 (1981). In *Brewer v. Erwin*, 287 Or. 435, 600 P.2d 398 (1979), the Oregon Supreme Court held that violations of the Act give rise to a statutory tort. *See also Bellikka v. Green*, 306 Or. 630, 762 P.2d 997 (1988). The Oregon court found that emotional distress damages are recoverable for a landlord's *culpable* failure to maintain the statutory conditions of habitability of the premises.

The Goudreaults argue that *Brewer* should not be followed and alternatively, if *Brewer* is followed, the court's instruction in the instant case failed to distinguish between culpable and non-culpable conduct and was therefore an incorrect statement of the law.

The Thomases contend that emotional distress damages are recoverable for violations of the Act without the limitation imposed in *Brewer*. They rely on cases from other jurisdictions that hold that negligent violation of a landlord's statutory duties and the implied warranty of habitability can give rise to damages for emotional distress. *See Stoiber v. Honeychuck*, 162 Cal.Rptr. 194, 101 Cal.App.3d 903 (1980); *Dorgan v. Loukas*, 19 Mass.App. 959, 473 N.E.2d 1151 (1985); *Hilder v. St. Peter*, 144 Vt. 150, 478 A.2d 202 (1984). *See also* M. Moskovitz, *The Implied Warranty of Habitability: A New Doctrine Raising New Issues*, 62 Cal.L.Rev. 1444 (1974). These cases do not involve the Uniform Residential Landlord and Tenant Act. Further, in *Dorgan* and *Hilder* it is unclear whether the decisions are based upon tort or extend the concept of "consequential damages" in contract to include damages for emotional distress for breach of an implied warranty of habitability.

In adopting its version of the Uniform Residential Landlord and Tenant Act, Arizona enacted that Act's expression of in-

tent concerning the administration of remedies:

"The remedies provided by this chapter shall be so administered that the aggrieved party may recover *appropriate* damages. The aggrieved party has a duty to mitigate damages." (Emphasis added.) A.R.S. § 33–1305(A).

■ The Act imposes duties upon a landlord independent of duties imposed by a lease. Further, it prohibits the parties to a lease from restricting the rights and remedies provided to tenants by the Act. A.R.S. § 33–1315(A).

The Act provides that a tenant, a landlord or another aggrieved party may recover "damages" or "actual damages" for violations of different sections of the Act. As the Oregon Supreme Court noted in *Brewer*, there is no guidance in the Act as to whether these terms are intended to be distinguishable from each other. *Compare, e.g.*, A.R.S. § 33–1361(B) *with* A.R.S. § 33–1367. *See Brewer*, 287 Or. at 444, 600 P.2d at 404. The terms are not defined in the Act nor further explained except for the general directive of A.R.S. § 33–1305 that remedies are to be administered to provide "appropriate" damages.

■ We agree with the *Brewer* court that the key to determining the type of "damages" or "actual damages" contemplated under the Act is to determine the type of harm in the setting of a normal residential rental transaction that can reasonably be said to lie within the contemplation of the protections afforded by the Act. *Brewer*, at 445, 600 P.2d at 405–406. We further agree with the Oregon court that these terms refer to compensation for tangible harm resulting from a statutory violation that may not necessarily be economic harm. *Brewer* at 446, 600 P.2d at 407. However, we do not agree with the remainder of the *Brewer* analysis that "damages" and "actual damages" do not encompass emotional distress for failure to provide essential services unless the landlord has acted intentionally or was grossly negligent.

■ The Oregon court reached this conclusion because it was of the opinion that an award for emotional distress where a landlord's acts are not culpable would be inconsistent with certain provisions of the Act. Specifically, the court pointed to O.R.S. 91.805, Arizona's A.R.S. § 33–1364.

Subsection A of A.R.S. § 33–1364 provides that where a landlord "negligently" or "deliberately" fails to supply an essential service, a tenant may elect either to procure those services himself and deduct the cost from the rent, recover damages for diminution of the fair rental value or procure substitute housing, discontinue rent and charge the landlord for the difference between the rent and the cost of substitute housing not to exceed 25% of the rent. In addition, subsection B provides that when the landlord has acted "deliberately", the tenant may recover the reasonable and actual cost of substitute housing not to exceed the rent.

We are not persuaded that A.R.S. § 33–1364 is intended to create exclusive remedies either for non-culpable or culpable failure to provide essential services.

■ For example, if by failing to provide these services, a landlord causes the tenant to incur loss of property, e.g., spoiled food in a refrigerator or physical illness, the tenant would not be prevented by A.R.S. § 33–1364 from seeking to recover damages for these injuries. Likewise if the injury caused is discomfort, anxiety or other mental distress, we are not persuaded that A.R.S. § 33–1364 precludes recovery. We reach this conclusion in light of A.R.S. § 33–1305 which makes supplementary principles of law applicable under the Act and A.R.S. § 33–1305 which directs the administration of remedies so that "appropriate damages" be awarded.

■ The comment to § 1.105 of the Uniform Act (A.R.S. § 33–1305) states that:
"... whether tort action, specific performance or equitable relief, is available is determined not by this section but by specific provisions and supplementary principles."

166

7A Uniform Laws Annotated at 436 (1985).

In *Stoiber v. Honeychuck,* 101 Cal. App.3d 903, 162 Cal.Rptr. 194 (1980), the California Court of Appeals, *quoting* M. Moskovitz, *The Implied Warranty of Habitability: A New Doctrine Raising New Issues,* 62 Cal.L.Rev. 1444, 1470–71 (1974), stated:

"Generally, the residential tenant who has suffered a breach of the warranty [of habitability] does not lose money. He instead cannot bathe as frequently as he would like or at all if there is inadequate hot water; he must worry about rodents harassing his children or spreading disease if the premises are infested; or he must avoid certain rooms or worry about catching a cold if there is inadequate weather protection or heat. Thus discomfort and annoyance are the common injuries caused by each breach and hence the true nature of the general damages the tenant is claiming."

*Id.* at 915–6, 162 Cal.Rptr. at 199.

The court concluded that a tenant may state a claim in tort against his landlord for damages resulting from breach of an implied warranty of habitability. *Id.* at 918–9, 162 Cal.Rptr. at 201.

The Goudreaults argue that *Stoiber* stands only for the proposition that bringing an action for breach of warranty of habitability does not preclude the tenant from also suing in tort. They argue that the Thomases were unsuccessful in their claim for intentional infliction of emotional distress and that there was no other tort upon which to award damages for emotional distress.

In *Stoiber,* the tenants had asserted claims for nuisance, intentional infliction of emotional distress, negligence, constructive eviction, and unlawful business practices before the trial court. The appellate court reversed the trial court's ruling that a contract action for breach of warranty of habitability was the tenant's exclusive remedy. While this is the holding in the case, we do not view the court's opinion in *Stoiber* as being as limited as the Goudreaults suggest.

In *Stoiber* the court recognized that breach of a landlord's implied contractual duties (implied warranty of habitability) and statutory obligations gives rise to a cause of action in tort. *Id.* at 918–9, 162 Cal.Rptr. at 201. *Contra Abram v. Litman,* 150 Ill.App.3d 174, 103 Ill.Dec. 349, 501 N.E.2d 370 (1986). While not every breach of a statutory duty gives rise to a cause of action for tort, we find that the types of harm protected under the Act provide a basis for tort recovery for mental distress caused by the breach. We conclude that allowing such recovery is consistent with Arizona case law regarding damages for mental distress.

In *Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 699 P.2d 376 (App.1984), this court held that emotional distress damages could be awarded in an action for bad faith breach of an insurance contract. We rejected the argument that because there was no intentional infliction of emotional distress and no outrageous conduct the plaintiffs were not entitled to an instruction on emotional distress. It is not necessary to assert intentional infliction of emotional distress as the exclusive tort to recover damages for emotional or mental distress.

The primary reason for precluding recovery of mental distress damages is that to permit such recovery could open the door to fictitious claims. *See Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 434, 58 Cal. Rptr. 13, 19, 426 P.2d 173, 179 (1967). We concluded in *Farr* that once a claimant has proven a loss of property, he can also recover damages for emotional distress. This principle is well established when the loss involves an interference with real property rights such as a tortious interference with the use and enjoyment of land. *See Acadia, California, Ltd. v. Herbert,* 54 Cal.2d 328, 5 Cal.Rptr. 686, 353 P.2d 294 (1960); *Herzog v. Grosso,* 41 Cal.2d 219, 259 P.2d 429 (1953). The principle that once property damages have been established, emotional distress damages may follow is similarly applicable in the instant case, since without question the alleged acts of the Goudreaults constituted an in-

terference with the Thomases' use and enjoyment of the leased property.

A tenant who is not provided with necessary services and maintenance of the leased premises as required under the Act suffers property damage because the value of his leasehold is decreased by the absence of adequate water, heat, cooling or proper maintenance of the building. However, the more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing. *See Stoiber,* 101 Cal. App.3d 903, 162 Cal.Rptr. 194 (1980); *Brewer,* 287 Or. 435, 600 P.2d 398 (1979); *Hilder,* 144 Vt. 150, 478 A.2d 202 (1984). Whether this condition was intentionally or negligently caused by the landlord is not relevant to the *actual* damages suffered by the tenant.

Accordingly, while we agree with *Brewer's* holding that breaches of the Act can give rise to a claim in tort for emotional distress damages, we disagree that such recovery should be limited to situations involving a landlord's "culpable" violation of the Act. We find no error in the trial court's jury instruction that compensatory damages could include recovery for mental suffering, anguish, discomfort or annoyance caused by the Goudreaults' failure to maintain the leased property in the required condition.

## PAROL EVIDENCE

■ The parol evidence rule prevents the use of evidence of prior or contemporaneous oral agreements to vary, contradict or enlarge a fully integrated, written agreement. *United States Fidelity & Guaranty Co. v. Olds Bros. Lumber Co.,* 102 Ariz. 366, 368, 430 P.2d 128, 130 (1967); *United California Bank v. Prudential Insurance Company,* 140 Ariz. 238, 268, 681 P.2d 390, 420 (App.1983). It is not a rule of evidence; it is a rule of substantive contract law. *Rental Development Corp. of America v. Rubenstein Construction Co.,* 96 Ariz. 133, 136–137, 393 P.2d 144, 146 (1964).

The Thomases sought to introduce evidence that prior to the execution of the second lease William Goudreault made various promises to the Thomases about work and repairs that he would effect on the premises. The Goudreaults moved *in limine* to preclude such evidence on grounds that it violated the parol evidence rule. The trial court denied the motion.

The Goudreaults argue that the only ground raised by the Thomases and considered by the trial court concerning the applicability of the parol evidence rule was that the evidence was admissible to demonstrate fraud in the inducement. They argue that the Thomases sought to establish that the only reason they signed the second written lease was because of the oral representations made by William Goudreault. The Goudreaults point out that fraud had not been pled and that the issue of fraudulent inducement to enter the lease was not properly before the court. Rule 9(b), Arizona Rules of Civil Procedure. *See Echols v. Beauty Built Homes, Inc.,* 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982); *Spudnuts v. Lane,* 131 Ariz. 424, 426, 641 P.2d 912, 914 (App.1982). The Goudreaults also note that the Thomases did not seek to rescind the contract based on purported fraud in the inducement, but sought damages for breach of the lease.

■ On appeal, the Thomases do not argue that the testimony was admissible to show fraud in the inducement. They assert that evidence of William Goudreault's promises was offered to show that the second lease was not an integration. *See United States Fidelity* 102 Ariz. at 368–69, 430 P.2d at 130. They also contend that it was offered to rebut an inference from their willingness to enter into the second lease that the condition of the property was not as bad as their trial testimony made it sound.

Our review of the record indicates that the Thomases' arguments to the trial court were not limited to fraud in the inducement. They also argued that the evidence was admissible for the reasons stated above.

The record also indicates that the Goudreaults did not ask for a limiting instruction to preclude the use of the evidence to

vary the terms of the second lease. Their failure to do so precludes this court from finding reversible error in the admission of that evidence. *Maxwell v. Aetna Life Ins. Co.*, 143 Ariz. 205, 214, 693 P.2d 348, 357 (App.1984). We conclude that the evidence was properly admitted by the trial judge.

## LOST PROFITS

The trial court instructed the jury that if it found that the defendants had not complied with their obligation as landlords, it could award the plaintiffs damages that included:

"[T]he loss of anticipated business profits which resulted from the landlord's default, and which the landlord at the time the lease was made could reasonably have foreseen would be caused by the ... default...."

This is a proper element of damages if the parties contemplated that the property would be used for business purposes. *Restatement (Second) of Property, Landlord and Tenant*, § 10.2(5) (1977).

The Goudreaults knew that the Thomases would operate a bakery business from the premises. Nevertheless, the Goudreaults argue that the lost profits instruction was in error because the Arizona Residential Landlord and Tenant Act does not apply to those portions of the rented property used for business purposes. The second lease which was in effect during the time for which lost profits were claimed specifically adopts the Arizona Residential Landlord and Tenant Act as the governing law. Thus, even if the Act were not applicable to a lease for a residence used for commercial purposes, the parties incorporated its provisions in the contract.

The Goudreaults also argue that the trial court erred by not requiring a higher burden of proof with respect to lost profits. The Goudreaults requested an instruction that required the plaintiffs to prove the amount of their damages for lost profits "with reasonable certainty." This instruction was refused. Instead, the jury was instructed that the plaintiffs could recover damages for lost profits "reasonably proved by the evidence." The defendants'

requested instruction correctly states the plaintiffs' burden of proof and should have been given. *See, e.g., Rancho Pescado, Inc. v. Northwestern Mutual Life Ins. Co.*, 140 Ariz. 174, 184, 680 P.2d 1235, 1245 (App.1984). We need not decide, however, whether the trial court's failure to correctly instruct the jury on this issue constitutes reversible error, since, as subsequently discussed in this opinion, the jury's award of damages for lost profits must be reversed on a different basis.

The Goudreaults contend that because the bakery business was being operated by the Thomases without a permit from the Maricopa County Health Department as required by law, the Thomases should not be permitted to recover loss of anticipated profits. The Thomases failed to obtain a permit until December, 1986, after the termination of their lease. They sought lost profits for the retail portion of their business from November, 1984 to October, 1986 and for lost profits from their wholesale business from December, 1986 to May, 1987.

The Thomases rely on two Arizona cases to support their entitlement to recover profits for a service performed without an appropriate license. In *Gaertner v. Sommer*, 148 Ariz. 421, 714 P.2d 1316 (App. 1986), the parties had entered into a contract in which the unlicensed plaintiff had agreed to sell a motorhome for the defendants. After holding that the plaintiff was not exempt from A.R.S. § 32–1180, which requires the licensing of all dealers of recreational vehicles, the court held that the plaintiff-dealer was nonetheless entitled to be paid his commission. The basis for the court's holding was that the legislature had not "clearly demonstrated" its intent to prohibit the maintenance of an action by an unlicensed dealer when it enacted the licensing statutes. *Id.* at 423, 714 P.2d at 1318.

In *Gaertner*, the court relied on *Mountain States Bolt, Nut & Screw Co. v. Best–Way Transportation*, 116 Ariz. 123, 568 P.2d 430 (App.1977) which involved certificates of convenience and necessity issued

by the Arizona Corporation Commission to regulated trucking companies. The court held that Best–Way was entitled to be paid for transportation services previously performed, including those performed in violation of its certificate, stating:

"... [I]f the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action, then recovery should be denied. However, none of these circumstances is present here.

\* \* \* \* \* \*

"Clearly the legislature could expressly have precluded any recovery by deficiently licensed carriers. It has done so in the case of actions by improperly licensed contractors. A.R.S. § 32–1153. There is no similar statutory provision here. Appellant has not advanced any compelling policy, such as the avoidance of fraud ... which would be served by barring any recovery whatsoever in these circumstances." *Id.* at 124–125, 568 P.2d at 431–432.

Unlike *Gaertner* and *Best–Way*, this case does not involve a situation where one party has obtained services and seeks to avoid payment for those services. Instead, it is a claim for loss of anticipated profits that the plaintiffs might have earned by engaging in the future in an activity for which they had no license.

In *Gibbs v. United Mine Workers of America*, 220 F.Supp. 871 (E.D.Tenn.1963) *aff'd.* 343 F.2d 609 (6th Cir.1965) *rev'd on other grounds* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal district court held that claims for anticipated future profits in a trucking business could not be predicated upon the concept that in the performance of the business the trucker would violate highway weight limitations. The trial court stated:

"The issue here is as to the probative value of the evidence of the loss of prospective profits when based upon prospective violation of truck weight laws.

The court is of the opinion that such evidence has no probative value."
*Id.* at 880.

*See also Shelley v. Hart,* 112 Cal.App. 231, 297 P. 82 (1931).

The *Restatement (Second) of Contracts* § 181 (1981) defines the effect of the failure to comply with a licensing statute on the enforceability of a contract. It provides:

"If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if

"(a) the requirement has a regulatory purpose, and

(b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement."

Comment b to § 181 states that a requirement having a regulatory purpose may be regarded as sufficiently substantial to preclude enforcement, while a regulation designed simply as a revenue raising tool may not preclude enforcement. Comment c to § 181 states that if a court determines that a license requirement is for regulatory purposes, it could then weigh the interests favoring enforcement of the promise with the public policy behind the regulation.

Although we find little evidence in the record to aid us in our consideration, it appears that the licensing requirement was designed to protect the public health rather than to raise revenue. *See* A.R.S. § 36–184; and A.C.C. R9–8–119A. Thus, we must weigh the interests for allowing consequential damages for the landlord's breach of the lease against the public policy of protecting the public health.

The Thomases sought recovery for anticipated profits, i.e., unearned profits. Unlike the parties in *Gaertner* and *Best–Way*, they had not performed and no recipient of their services was trying to avoid payment.

We find the rationale of *Gibbs* applicable to the instant case. Further, in balancing the policy of protecting the public health against allowing the recovery of anticipated profits for an unlawful activity that was restricted because of a landlord's breach of contract, we find the interest in protecting the public health by requiring inspection and licensing the more important consideration. Accordingly, we conclude that the trial court erred by allowing recovery for lost profits during the time that the Thomases were without a license. On remand, the Thomases shall not be precluded from presenting evidence, if such be the fact, that their failure to obtain the necessary permit was caused by the defendant's conduct.

## RETALIATORY CONDUCT UNDER A.R.S. § 33–1381

A.R.S. § 33–1381 prohibits a landlord from increasing rent, decreasing services or bringing or threatening to bring an action for possession in retaliation for a complaint by a tenant in violation of A.R.S. § 33–1324.

The trial court instructed the jury:

"A landlord may not threaten to bring an action for possession in retaliation for the tenants having complained to the landlord of a violation of the landlord's obligation to maintain the premises."

The Goudreaults argue that the trial court committed reversible error in giving this instruction over objection and by denying their motion for directed verdict on the issue. They contend that there was no evidence at trial to support the claim that the Goudreaults threatened to bring any action for possession in retaliation for a complaint by the tenants of a violation of the Act. They acknowledge that there was evidence from which the jury could find that the Thomases complained of violations and that Goudreault threatened to bring an action for possession for the Thomases' failure to pay the rent. However, they argue that there was no evidence that a threat to bring an action for possession was in retaliation for a complaint about the condition of the property.

A.R.S. § 33–1381(C) provides:

"Notwithstanding subsections A and B of this section, a landlord may bring an action for possession if either of the following occurs:

. . . .

2. The tenant is in default in rent."

The Goudreaults acknowledge that there was one instance of testimony concerning a threat of eviction that was not directly predicated on the tenant's failure to pay rent. Mr. Thomas testified as follows:

"Q. Tom, at any time that you were living at 88–18 North Scottsdale Rd., did Mr. Goudreault threaten you with an eviction?

"A. Yes, he did.

"Q. When?

"A. When we had got the bids and I was trying to get the weeds cleaned up and he said he wasn't going to do it, he was going to send out the boys to cut it down and I told him if I had gotten the bids, let's get it sprayed and he didn't want to spray it. I told him I was going to go ahead and he told me, 'If you do, I'm going to evict you.'

"Q. That was in the summer of '84?

"A. Summer of '84."

At the time the Thomases were current on their rent.

The Goudreaults argue that the only reasonable inference from the quoted testimony was that the threat of eviction was in response to Thomases' threat that he was going to improperly avail himself of self-help remedies under the Act. There was also evidence that this threat came shortly after Mr. Thomas wrote a letter to Mr. Goudreault demanding numerous repairs and threatening legal action or self-help remedies. Further, Mr. Thomas had testified that the Goudreaults' plan to solve the weed problem about which he had complained since 1983 was inadequate and that self help was not improper. Although susceptible to defendant's interpretation, we find the evidence sufficient to support a

reasonable inference that the threat of eviction was a retaliatory action.

## CROSS–APPEAL—DIRECTED VERDICT WITH RESPECT TO LIABILITY FOR THE FIRE

■ The trial court concluded that the Thomases had failed to prove, through expert testimony, the standard of care applicable to air conditioning and heating system repairmen. Therefore, the court concluded that if there could be no showing that Schroeder (the repairman) was negligent, the Goudreaults could not be held liable for his negligence. The Thomases argue that the trial court later shifted its focus and upheld the directed verdict on grounds that no causation had been proven.

A review of the entire argument indicates that the trial court reaffirmed its conclusion that the absence of expert testimony to establish the standard of care for a reasonable air conditioning repairman and whether the alleged defects would have been obvious to an experienced repairman were necessary elements missing from plaintiffs' case.

The Thomases rely on *Rossell v. Volkswagen of America*, 147 Ariz. 160, 709 P.2d 517 (1985) for the proposition that expert testimony was not necessary. They argue that there is no proper standard of care for the air conditioning industry as a whole that can be used to determine negligence. Thus, they argue that expert testimony was not needed to prove Schroeder's negligence.

In *Rossell v. Volkswagen of America* the defendant manufacturer had claimed that plaintiff's proof was deficient because the plaintiff's expert testimony didn't establish that the defendant had deviated from the accepted standard of care in the automobile industry. However, that is not the situation presented in the instant case.

In *Rossell* the court decided that a jury was entitled to find a manufacturer negligent in the manner described by the plaintiff's expert witnesses even though that testimony was not a description of a deviation from the accepted standard of care in the industry. Based on the plaintiff's expert testimony, the jury found Volkswagen negligent in designing the vehicle. This is unlike the situation of the instant case. In the instant case there was no expert evidence as to what a reasonable air conditioning repairman should have known, noticed, or recognized nor what he should have done concerning the problems with the Gas–Pac unit.

The Thomases argue that a jury through its common sense could have determined that Schroeder had acted negligently. We are of the opinion that a lay person unfamiliar with practice in the air conditioning industry could not by simple use of common sense determine what a repairman should have done. The Arizona Supreme Court stated in *Rossell,*

> "We do not disturb the rule that in determining what is 'reasonable care,' expert evidence may be required in those cases in which factual issues are outside the common understanding of jurors."

*Id.* at 167, 709 P.2d at 524.

We conclude that the trial court was correct in granting the directed verdict in light of the Thomases' failure to provide the needed expert testimony. *See Maricopa County v. Cowart,* 106 Ariz. 69, 471 P.2d 265 (1970); *Kreisman v. Thomas,* 12 Ariz.App. 215, 469 P.2d 107 (1970); *Powder Horn Nursery v. Soil & Plant Laboratory, Inc.,* 119 Ariz. 78, 579 P.2d 582 (App.1978).

## DUTY TO REBUILD THE PREMISES

■ A.R.S. § 33–1366(A) provides the remedies available to a tenant in case of damage to or destruction of the dwelling unit by fire or casualty. That statute provides:

> "If the dwelling unit or premises are damaged or destroyed by fire or casualty to an extent that enjoyment of the dwelling unit is substantially impaired, the tenant may do either of the following:

"1. Immediately vacate the premises and notify the landlord in writing within 14 days thereafter of his intention to terminate the rental agreement, in which case the rental agreement terminates as of the date of vacating.

"2. If continued occupancy is lawful, vacate any part of the dwelling unit rendered unusable by the fire or casualty, in which case the tenant's liability for rent is reduced in proportion to the diminution in the fair rental value of the dwelling unit."

The Thomases contend that the trial court's ruling that the Goudreaults had no duty to repair the premises after the fire was incorrect because it ignored the responsibilities placed on the landlord by A.R.S. § 33–1324(A).

A.R.S. § 33–1324(A) requires a landlord to maintain the leased premises in a fit and habitable condition. The Thomases contend that although the landlord obviously must be given a reasonable time to do so, he must repair and restore the premises if a tenant elects to continue occupancy pursuant to A.R.S. § 33–1366(A)(2) after substantial impairment caused by fire. The Thomases' reliance on A.R.S. § 33–1324(A) ignores the distinction that the legislature apparently intended to draw between remedies allowed for breach of A.R.S. § 33–1324, which are set forth in A.R.S. § 33–1361, and the remedies allowed when the problem is catastrophic and caused by fire or other casualty. *See* A.R.S. § 33–1366.

A.R.S. § 33–1361 clearly does not contemplate the "substantial impairment" discussed in § 33–1366. Had the legislature intended to impose a burden upon the landlord to repair the premises when substantial impairment is caused by fire, it could have easily provided for this in § 33–1366. A.R.S. § 33–1366, as a specific statute addressing this issue, must govern over a more general statute which arguably could be applicable. *See, e.g., Pima County v. Heinfeld*, 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982).

We conclude that A.R.S. § 33–1366 provides the exclusive remedies available to a tenant in the event that substantial impairment of the use of the premises is caused by fire.

## ATTORNEY'S FEES ON APPEAL

Both parties have requested attorney's fees on appeal pursuant to A.R.S. § 12–341.01. In the exercise of our discretion, we decline to award either party attorney's fees on appeal.

## SUMMARY

The judgment entered against the defendants for retaliatory damages, attorney's fees and costs is affirmed, together with the trial court's entry of a directed verdict in favor of the defendants on plaintiffs' claim for fire damages. The jury's verdicts for the defendants on plaintiffs' claims for interference with business expectancies and for intentional infliction of emotional distress are also affirmed.

In reviewing the judgment, we note that the jury awarded a total amount of compensatory damages without specification of the amounts awarded on the various elements of plaintiffs' damages claims. Because of errors committed by the trial court concerning the recovery of damages for lost profits, the compensatory damages award must be vacated and the matter remanded for a new trial consistent with this opinion on the issue of compensatory damages. Upon retrial, the liability of the defendants on all claims found in plaintiffs favor by the jury shall not be in issue except as to plaintiffs' claim for lost profits.

The matter is remanded for further proceedings.

CONTRERAS, P.J., and EUBANK, J., concur.

*Note:* Retired judge LEVI RAY HAIRE was authorized to participate in this appeal by order of the Chief Justice of the Arizona

Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.