## Daughen v. Fox

*Richard A. Sprague* and *Randi J. Vladimer,* for plaintiffs.

*Ralph L. Hose,* for defendants.

CORSO, *J.,* May 4, 1987 — This appeal arises from the granting of a motion for summary judgment by the court on February 20, 1987, in favor of defendants, Stuart A. Fox, D.V.M., F. Sawires, D.V.M. and Rau Animal Hospital.

The facts of the case may be summarized as follows:

On June 23, 1980, plaintiffs observed that their pet dog "Cindy," an eight-year-old mongrel breed (part cocker spaniel, part Shetland sheepdog, and part poodle) was vomiting its food shortly after ingestion. They took the dog to Rau Animal Hospital for diganosis and treatment. Defendant Fox prescribed anti-diarrheal medication for the dog and instructed plaintiffs to obtain a stool sample.

Noticing a worsening of the dog's condition, and

being unable to obtain a stool sample, plaintiffs again took Cindy to defendant animal hospital for further examination on June 24, 1980. The dog was given a "stool softener" and a urine sample was taken. Plaintiffs were instructed to administer an enema to the dog that evening and to return the following day for X-rays.

After taking X-rays of the dog on June 25, defendant Sawires called plaintiffs and informed them that Cindy had a needle in her intestine and that surgery would be necessary to remove it. Plaintiffs were shown an X-ray with a needle-like object lodged in the intestine, and authorized surgery. Surgery was performed later that day, but no needle was found in the dog. Plaintiffs were shown two X-rays, different from those which they had previously seen, revealing a bullet-like object lodged in the dog's liver. Defendant Sawires then informed plaintiffs that Cindy was suffering from toxic poisoning from the lead bullet. He also informed them that defendants were not qualified to remove the bullet, and that only veterinarians at the University of Pennsylvania Animal Hospital were so qualified. In response to their inquiry as to whether they should take the dog there, defendant Sawires told plaintiffs that the dog was too weak to survive the surgery, and suggested that she be treated at their hospital with vitamin therapy and intravenous feeding. Plaintiffs followed defendant's advice. Cindy died at the Rau Animal Hospital six days later.

Plaintiffs allege that the X-ray of the dog with a needle lodged in its intestine was not an X-ray of Cindy; that defendants' introduced a foreign body into Cindy's liver during the unnecessary surgery; that defendants, in their efforts to conceal their own incompetence, caused Cindy to suffer a slow and ignominious death; and that defendants knew the

424

dog could not possibly recover from hepatic toxicity with mere vitamin therapy and intravenous feeding.

Count I of the complaint, in trespass, alleges that defendants performed the above acts with intent to cause plaintiffs severe emotional distress, or in reckless disregard of the likelihood thereof, and prays for damages in excess of $10,000. Count II, in trespass, seeks recovery for loss of "unique chattel," loss of the dog's companionship and comfort, and asks for damages in equal amount.

A motion for summary judgment should be granted only where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The Superior Court of Pennsylvania has stated the applicable law as follows:

"The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pa. Gas & Water Co. v. Nenna & Fran Inc.*, 320 Pa. Super. 291, 467 A.2d 330 (1983), citing *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

Plaintiff's contend that the above-stated facts constitute a cause of action for intentional infliction of emotional distress. Section 46 of the Restatement (Second) of Torts[1] succinctly states the applicable law as follows:

---

1. Pennsylvania has adopted the Restatement (Second) of Torts, §46. See *Stoddard v. Davidson*, 355 Pa. Super. 262, 513 A.2d 419 (1986).

"§46. *Outrageous Conduct Causing Severe Emotional Distress* —

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily injury."

Comment (1) entitled "conduct directed at a third person," under section 46 states in pertinent part:

"Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this section applies. The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred.

"Furthermore, the decided cases in which recovery has been allowed have been those in which the plaintiffs have been near relatives, or at least close associates, of the person attacked . . ."

This comment indicates that the wife of a man who is murdered cannot recover for intentional infliction of emotional distress unless she is present at the time of its occurrence.

In the case at bar, Cindy was not a member of plaintiff's immediate family and had the legal status of personal property.[2] As such, there is no liability under section 46(2)(a) of the Restatement. Cindy not being a "person," and plaintiffs not alleging bodily harm, there is no liability under section 46(2)(b). Both subsections of the restatement require plaintiffs to be present at the time of the "outrageous conduct." The well-pleaded facts clearly reveal that plaintiffs were not present at such time in this case.

A recent Pennsylvania Superior Court case reaffirms the ambit of this tort liability. *Stoddard v. Davidson,* 355 Pa. Super. 262, 513 A.2d 419 (1986) involved a claim for intentional infliction of emotional distress where plaintiff drove his automobile over a corpse in the highway. Plaintiff averred that defendant had struck a pedestrian as she was crossing the highway, and intentionally left the scene, making no effort to remove the body. In dismissing the claim, the court stated:

"Appellant is not a member of Sharon Wascavage's (the deceased pedestrian) family, as compliance with (2)(a) would require; nor was appellant 'present at the time' when appellee's vehicle struck her down and she was left on the road, as compliance with (2)(b) would require. The facts of this case cannot, therefore, be the basis for relief under Restatement section 46." *Stoddard, supra.*

*Halliday v. Beltz,* 356 Pa. Super. 375, 514 A.2d 906 (1986) further exemplifies the frivolous nature of plaintiffs' claim herein. In that case, plaintiff brought a claim for negligent infliction of emotional

---

2. The Dog Law of Pennsylvania, 3 P.S. §459-101 et seq.

distress arising from the death of plaintiff's wife as a result of medical malpractice. In dismissing the claim, the court wrote:

"While appellants were in the hospital during the operation itself and the post-operative emergency remedial measures, they never viewed any of the actual surgery. We do not believe that appellant's complaint meets the 'sensory and contemporaneous observance of the accident,' or the personal observation requirements of Pennsylvania case law . . ." *Halliday, supra.*

Had plaintiff in *Halliday* brought a claim for intentional infliction of emotional distress arising from the death of his dog, rather than his wife, it is inconceivable to this court, based upon the present state of the law, that the Superior Court would find such to be a cognizable claim.

Based upon the foregoing, this court need not address whether defendants' conduct amounted to extreme and outrageous conduct, because even assuming that it did, plaintiffs have failed to state a valid cause of action in count I.

Count II of the complaint, sounding in trespass, seeks recovery for the loss of a "unique chattel," and for the loss of the dog's companionship and comfort.

The Dog Law of Pennsylvania, 3 P.S. §459-101 et seq., declares dogs to have the legal status of personalty. 3 P.S. §459-601 provides in relevant part:

"(a) *Dogs to be personal property*—All dogs are hereby declared to be personal property and subjects of theft . . ."

Under Pennsylvania law, the measure of damages for destruction of personal property is the property's value at the time of its destruction. *Commonwealth, Dept. of Transportation v. Estate of Crea,* 92 Pa. Commw. 242, 483 A.2d 996 (1977);

*Jones v. Monroe Electric Co.*, 350 Pa. 539, 39 A.2d 569 (1944); Restatement (Second) of Torts §927.

Restatement (Second) of Torts §911, entitled "Value," states in part:

"(1) As used in this chapter, value means exchange value or the value to the owner if this is greater than the exchange value."

Comment (e) thereunder states:

"If the subject matter cannot be replaced, as in the case of destroyed or lost family portrait, the owner will be compensated for its special value to him, as evidenced by the original cost, and the quality and condition at the time of loss . . . In these cases, however damages cannot be based on sentimental value. Compensatory damages are not given for emotional distress caused merely by the loss of the things, except that in unusual circumstances damages may be awarded for humiliation caused by deprivation, as when one is deprived of essential articles of clothing."

There is no doubt the dog, Cindy, was the source of pleasure and an object of affection to plaintiffs. However, as such, her uniqueness arises from the plaintiffs' sentimental attachment to bar. With all due respect to the demised animal, Cindy was an eight-year-old mongrel dog, and was, objectively speaking, totally devoid of uniqueness.

With regard to plaintiffs' claim for damages in compensation for loss of the dog's companionship and comfort, i.e. loss of consortium, an action seeking recovery for such loss can only be maintained by the spouse of an injured person.

"In this commonwealth, loss of consortium has been recognized as a 'right growing out of the marital relationship. . . .' The right to recover for loss of consortium springs from the English common law and once extended solely to a husband's recov-

ery for the loss of services rendered to him by his wife. That right was later expanded in this country to include a wife's recovery for the loss of services rendered by her husband. . . .' It is clear from the above that a consortium claim is grounded on the loss of a spouse's services after injury."' *Burns v. Pepsi-Cola Metropolitan Bottling Co.*, 353 Pa. Super. 571, 575-6, 510 A.2d 810, 812-3 (1986).

Prior to 1973, under Pennsylvania law an action for the loss of consortium could only be brought by the husband of an injured party. See *Hopkins v. Blanco*, 224 Pa. Super. 116, 302 A.2d 855 (1973). There is not even authority for extending the right to include a parent's recovery for the loss of their child's companionship and comfort. As such, clearly, there is no right to recover for the loss of a pet's companionship and comfort. Therefore, count II of the complaint herein fails to state a cause of action.

Defendant's motion for summary judgment addressed the trespass counts only. Accordingly, count III of plaintiff's complaint in assumpsit, was neither addressed, argued or decided by this court in its order of February 20, 1987, and remains a viable cause of action.