903 P.2d 621

**Jackqueline L. REED, a single woman, Plaintiff–Appellant/Cross–Appellee,**

v.

**MITCHELL & TIMBANARD, P.C., an Arizona corporation; Sheldon Mitchell and Jane Doe Mitchell, husband and wife; Kerry B. Moore and John Doe Moore, wife and husband, Defendants–Appellees/Cross–Appellants.**

No. 1 CA–CV 92–0348.

Court of Appeals of Arizona, Division 1, Department E.

April 11, 1995.

Review Denied Sept. 26, 1995.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Arthur N. Gorman and Deborah A. Nastro, Phoenix, for plaintiff-appellant/cross-appellee.

Burch & Cracchiolo, P.A. by Daniel Cracchiolo, Daryl Manhart and Karen J. Williams, Phoenix, for defendants-appellees/cross-appellants.

## OPINION

KLEINSCHMIDT, Judge.

The Defendants are a law firm and lawyers who represented the Plaintiff, Jackqueline Reed, in a divorce proceeding. Reed sued them, alleging that they failed to adequately secure a promissory note given to her by her former husband. The Defendants moved for summary judgment and partial summary judgment on the grounds, among others, that Reed's malpractice action was barred by the statute of limitations. Because the trial

judge found the statute had run, he granted summary judgment to the Defendants but denied their request for attorney's fees and costs. Reed appealed, and the Defendants cross-appealed the denial of their request for fees and costs.

The trial court erred in holding that Reed's action was time-barred. We also reject the Defendants' contentions, which were not addressed by the trial court, that they are entitled to judgment on the merits because Reed cannot prove the essential elements of her malpractice action, and cannot prove any damages resulting from the malpractice. However, we agree with Defendants that Reed is not entitled to recover damages for emotional distress. Accordingly, we reverse the decision of the trial court on the limitations issue, grant partial summary judgment for the Defendants on the emotional distress issue, and remand this case for further proceedings on the merits. Our decision moots the cross-appeal, but even if it did not, we would affirm the trial court's denial of the Defendants' request for fees and costs.

### FACTS AND PROCEDURAL HISTORY

In 1983, Jackqueline Reed retained the Defendants to represent her in her divorce from her husband, Dr. Eldon Reed. In April 1984, a formal decree of dissolution prepared by the Defendants was entered by the judge, which, among other things, ordered the husband to give Reed a $250,000 promissory note. The interest bearing note was payable at the rate of at least $1,000 per month beginning May 1, 1984, with a balloon payment of the remaining balance due on May 1, 1986. The order stated:

> Said note shall be secured by any assets awarded Husband herein having a value of up to 125% of the face value of the note, which assets shall be chosen by the Wife.

Dr. Reed executed the note in August 1984. Two months later, he pledged several limited partnership interests, tendered a mortgage on his $36,400 condominium, and delivered the stock certificates of his professional corporation as security for the note. The Defendants informed their client of these transactions and sent her copies of the pertinent documents. Although the Defendants told Reed they had secured her note with all available assets, they never attempted to secure the $62,419 in cash proceeds from the sale of the family residence awarded to Dr. Reed, never attempted to secure the $620,000 in his Deferred Compensation Plan, and never attempted to secure his $44,620 interest in a medical building, or the equipment, tangible assets and accounts receivable belonging to his professional corporation.

On May 1, 1986, Dr. Reed failed to make the balloon payment called for by the note. The note may have been extended for a year—the parties dispute the point—but in any event, even if an extension was granted, Dr. Reed failed to pay the note on May 1, 1987. Pursuant to Reed's petition for an order to show cause, the court, on August 10, 1987, ordered that Reed have judgment against her former husband on the note.

At that point, the Defendants told Reed that they did not do collection work and they referred her to attorney David Harowitz. Reed consulted with Harowitz on September 25, 1987. She told him that she wanted to collect on a judgment against her ex-husband, but she was afraid that he might become angry and cease making spousal maintenance and child support payments.

Harowitz reviewed Reed's divorce file in late October 1987. On October 26, 1987, he wrote her a letter informing her that the August 10, 1987 judgment against Dr. Reed had not been recorded and that he thought Dr. Reed's pension plan assets were unreachable. In December 1987, Harowitz noticed Dr. Reed for a debtor's exam. Dr. Reed wrote Harowitz that he would not appear, and the doctor called his former wife and allegedly harassed her for trying to collect the judgment. As a result, Reed told Harowitz to discontinue any collection efforts.

On May 29, 1988, Dr. Reed filed for Chapter 7 bankruptcy. Reed retained a bank-

ruptcy attorney, John J. Herbert, to represent her in those proceedings. After reviewing her divorce file, Herbert told Reed that the Defendants may have committed malpractice by failing to secure the note.

On October 25, 1989, Reed filed this legal malpractice suit against the Defendants, asserting claims for breach of contract and for negligence based on the Defendants' alleged failure to properly secure the note. Reed's expert witness, J. Emery Barker, testified that the Defendants had fallen below the standard of care by not specifying in the decree the assets which were to serve as security for the note or by not requiring Dr. Reed to execute security documents to be attached to the decree.

The Defendants moved for summary judgment. They argued that Reed's complaint was barred by the statute of limitations. They also argued that they were entitled to summary judgment on the alternate grounds that Reed could not have prevailed on her claim against her husband even if the Defendants had not been negligent, that Reed could not prove damages against them because the debt from her former husband could have been collected after Reed discharged the Defendants as her attorneys, and that Reed was not entitled to damages for emotional distress. Reed counter-moved for summary judgment on the limitations issue, contending that her complaint was timely filed. The trial court ruled in favor of the Defendants, holding:

> Assuming arguendo that the promissory note was inadequately secured, giving the Plaintiff every benefit of the doubt, it is clear that the Plaintiff knew or should have known that Dr. Reed was not going to pay and that a question regarding the adequacy of the security was presented as of September 25, 1987.

> As of September 25, 1987, Dr. Reed had defaulted on the promissory note and had *not made* the balloon payment due on May, 1986 or on May, 1987, assuming that a one year extension ... had been granted....

> Further, the Plaintiff had retained attorney David Harowitz to try to collect on the note. Mr. Harowitz had begun work to determine whether any assets existed upon which to execute when he was instructed by the Plaintiff to stop.

> Therefore, assuming there was lawyer malpractice on Defendants' part, and damages resulting therefrom, the negligence and damages were ascertainable and nonspeculative, on September 25, 1987.

The trial court did not rule on the Defendants' alternative grounds for summary judgment.

Reed moved for reconsideration. The trial court denied her motion, holding:

> The inquiry is when the Plaintiff could have reasonably discovered the alleged malpractice. In other words, when the plaintiff should have or could have known of the alleged malpractice. The Plaintiff could have known of the malpractice if she had not terminated Mr. Harowitz. To conclude otherwise would suggest that the Plaintiff could engage Mr. Harowitz, or other counsel, ad infinitum and terminate the professional relationship as she did in this case and the statute of limitations would never run.

After the trial court ruled in their favor, the Defendants sought an award of their costs and attorneys' fees pursuant to Rule 11, Arizona Rules of Civil Procedure, and Ariz. Rev.Stat.Ann. ("A.R.S.") sections 12–341.01(C) and 12–349. The Defendants maintained that the lawsuit was obviously time-barred and unsubstantiated from the start. The trial court denied this motion, finding that the "statute of limitations issue as applied to the facts in this case is fairly debatable and susceptible to the divergent interpretations of Plaintiff and Defendants" and that each side had a " 'good faith' basis for the position taken."

### THE MALPRACTICE ACTION IS NOT TIME–BARRED

In reviewing a grant of summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). We are not bound by any conclusions

of law drawn by the trial court. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 54 (1966).

██ The parties agree that, in Arizona, legal malpractice actions are subject to the two-year statute of limitations for tort claims set forth in A.R.S. section 12–542. *Tullar v. Walter L. Henderson, P.C.*, 168 Ariz. 577, 580, 816 P.2d 234, 237 (App.1991). A claim for legal malpractice accrues when: (1) the plaintiff knows or reasonably should know of the attorney's negligent conduct; and (2) the plaintiff's damages are ascertainable, and not speculative or contingent. *Id.* at 579, 816 P.2d at 236.

██ The Defendants argue that Reed's cause of action accrued, at the latest, in September 1987. By that time, Dr. Reed had defaulted on the note, Reed had converted the obligation into a judgment for the full amount of the note, and she had retained Harowitz to assist her in her collection efforts. They say that by September 1987, the alleged negligence had occurred, the alleged damage had been sustained, and Reed was aware or should have been aware of the facts underlying her cause of action for malpractice.

The Defendants focus on Dr. Reed's default on the note and tread lightly over the question of when Reed should have reasonably discovered that the note had not been adequately secured. Before Reed obtained a judgment on the note, the Defendants continually assured her that they had secured all available assets. After she obtained the judgment, Reed was referred to, and promptly contacted, a collection attorney to attempt collection on the security underlying the note. The Defendants argue, and the trial court found, that Reed's cause of action against them accrued at that time—on the date of her *first* consultation with Harowitz—September 25, 1987. Yet, at that point, Harowitz had not had an opportunity to review Reed's divorce file, or make any effort to collect on the note. We do not see how Reed could reasonably have been aware that the note was inadequately secured at that time.

We conclude that the statute of limitations on Reed's malpractice claim could not have begun to run before October 27, 1987, the earliest date on which Reed could have received the letter Harowitz sent her which, generously interpreted in favor of the Defendants, gave Reed some reason to believe that the note was not adequately secured. Reed herself recognizes that her cause of action may have accrued at this time. In her opening brief, she acknowledges that Harowitz's letter was arguably the "first evidence that the note was truly uncollectible." At that point, Reed's damages were definite and ascertainable and one could possibly conclude that she reasonably should have been aware of the facts underlying her cause of action for malpractice. Reed filed her lawsuit against the Defendants on October 25, 1989, within two years of the accrual date. Accordingly, her action is not time-barred. The trial court should have granted Reed's motion for summary judgment on this issue. In view of our conclusion, we need not address Reed's argument, raised in her brief, that her cause of action did not accrue until her husband filed bankruptcy in May 1988.

### THERE IS SUFFICIENT EVIDENCE OF NEGLIGENCE TO RAISE A JURY QUESTION

██ The Defendants argue that they are entitled to summary judgment because Reed cannot prove that, but for their negligence, she would have been successful in collecting the funds her husband owed her. *Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App.1986). The Defendants submit that the sole act of malpractice identified by Reed's expert was their failure to either list all of the security in the decree and present it to the judge for signature, or to require Dr. Reed to execute security documents as attachments to the decree. They claim that Reed's expert, an attorney, could only speculate that the court would have approved and signed such a judgment. They argue that such speculation is insufficient, as a matter of law, to establish that Reed would have prevailed.

██ The judge who handled the dissolution is the only one who could give a defini-

tive answer on this issue, and his testimony is precluded as a matter of public policy. *Id.* at 420, 733 P.2d at 305 (testimony of judge is usually excluded as too prejudicial to opposing party and as presenting an appearance of impropriety). Instead, the trier of fact must employ an objective standard to determine whether a reasonable judge would have signed the decree listing the security for the debt. *See id.* at 418, 733 P.2d at 303. The deposition testimony of Reed's expert was stronger than mere speculation. He testified that he believed the proposed decree would have been signed. The Defendants did not present any evidence rebutting Barker's testimony on this issue. The jury, as the trier of fact, has the duty to determine what a reasonable judge would have done.

In addition, although the Defendants chide Reed for not presenting evidence that Dr. Reed's attorney would not have objected to the proposed decree, they have not presented any evidence that the attorney would have objected. Even if such evidence had been presented, the jury could still find that the judge would have entered the decree over such objection.

The Defendants also argue that they are entitled to summary judgment because Reed cannot prove any damages arising from their alleged negligent conduct—an essential element of her malpractice claim. *Vivian Arnold Realty Co. v. McCormick,* 19 Ariz.App. 289, 294, 506 P.2d 1074, 1079 (1973). They argue that Reed's failure to attempt to execute against her ex-husband's assets from the time she obtained the default judgment in August 1987, to the time he filed bankruptcy in May 1988, is the real cause of her damages. Further, the Defendants argue that Reed still cannot ascertain or establish her damages because the debt on the note was declared nondischargeable in the bankruptcy.

At most, the Defendants' arguments raise questions of fact regarding whether Reed has actually suffered a loss as the result of the Defendants' alleged negligence and her possible contributory negligence or failure to mitigate her damages. These must be resolved by the jury. *See* Ariz. Const. Art. 18, § 5 and A.R.S. § 12–2505(A) (defense of contributory negligence is always question of fact for the jury).

## REED IS NOT ENTITLED TO DAMAGES FOR EMOTIONAL DISTRESS

■ Reed asserts that the alleged malpractice put her financial security at risk, and as a result, she has suffered emotional distress and various ills including headaches, stomachaches and neck pains. The Defendants argue that, as a matter of law, Reed cannot recover damages for emotional distress as part of her malpractice claim, and they seek partial summary judgment on this issue. We hold that simple legal malpractice resulting in pecuniary loss which in turn causes emotional upset, even with physical symptoms, will not support a claim for damages for emotional distress.

One Arizona case, *Deno v. Transamerica Title Ins. Co.,* 126 Ariz. 527, 530, 617 P.2d 35, 38 (App.1980), has held that in the absence of outrageous conduct or bad faith, a person who suffers pecuniary loss as the result of a negligently prepared title report, is not entitled to recover damages for emotional distress resulting from the loss. Most other jurisdictions which have considered this issue in the context of legal malpractice have held that "damages for emotional injuries are not recoverable where they are a *consequence* of other damages caused by the attorney's negligence." 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 16.11 at 904 (3d ed. 1989 and Supp.1993) (citing cases from numerous jurisdictions); *see also* D. Dusty Rhoades and Laura W. Morgan, *Recovery for Emotional Distress Damages in Attorney Malpractice Cases,* 45 S.C.L.Rev. 837, 839 (1994), in which the authors, in describing the holdings of some courts, say, "consequential damages for emotional distress are not recoverable when the client's direct damages are strictly economic or pecuniary." Rhoades and Morgan also observe that there is an exception to the general rule to allow recovery for emotional distress which is caused by malpractice that results in direct damages to a personal, as opposed to an economic interest. Examples of such personal damages are the loss of liberty or

damage to a family relationship. Roades and Morgan, *supra* at 842–44. *See also Holliday v. Jones*, 215 Cal.App.3d 102, 264 Cal.Rptr. 448 (1989) (negligent handling of criminal defense). So too, as *Deno* notes, the rule disallowing recovery for emotional distress does not apply if the attorney's conduct involves fraud, intentional conduct, a willful fiduciary breach or physical contact. 126 Ariz. at 529, 617 P.2d at 37; *see also Legal Malpractice* § 16.11 at 904.

A number of cases from other jurisdictions support the general rule. *See Smith v. Superior Court*, 10 Cal.App.4th 1033, 13 Cal. Rptr.2d 133, 136–37 (1992) (mere negligence will not support recovery for mental suffering where the defendant's tortious conduct has resulted only in an economic injury to the plaintiff); *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112, 118 (1984) (evidence of willful or wanton conduct required before plaintiff may recover emotional distress damages from attorney in legal malpractice suit); *Selsnick v. Horton*, 96 Nev. 944, 620 P.2d 1256, 1257 (1980) (no emotional distress damages against attorney for malpractice absent proof of extreme and outrageous conduct causing such anguish or distress); *Hilt v. Bernstein*, 75 Or.App. 502, 707 P.2d 88, 95–96 (1985) (no emotional distress damages allowed in legal malpractice suit if injury is based upon an economic claim); *but see Tara Motors v. Superior Court*, 276 Cal.Rptr. 603, 608–09 (App.1990) (divided court declined to follow prior California precedent and allowed claim for emotional distress damages in legal malpractice suit holding that "substantial damages" requirement for economic loss would prevent abusive, unfounded allegations of emotional distress); *Salley v. Childs*, 541 A.2d 1297, 1300–01 (Me.1988) (ignoring inconsistent authority and holding that once client establishes pecuniary loss due to malpractice, client can recover all damages proximately caused by malpractice, including emotional distress damages).

Reed counters, however, with the argument that Arizona case law allows recovery of emotional distress damages when the tortfeasor's conduct was not intentional or willful and wanton. She relies on several insurance bad faith cases as support for this proposition, including *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376 (App.1984). However, the tort of bad faith is still an intentional one—the defendant insurer must either have knowledge of, or reckless disregard for, the lack of a reasonable basis for denying an insurance claim. *Id.* at 5, 699 P.2d at 380.

Reed also relies on *Thomas v. Goudreault*, 163 Ariz. 159, 166–67, 786 P.2d 1010, 1017–18 (App.1989), in which we held that a landlord's breach of duties imposed by the Arizona Residential Landlord and Tenant Act provided a basis for the recovery of damages for emotional distress that resulted from mere negligence. The basis for the holding in *Thomas*, however, is akin to the principle that damages for emotional distress are recoverable where the injury is personal, as opposed to economic. We acknowledged in *Thomas* that a failure to comply with the Landlord Tenant Act resulted in property damage, but we went on to say: "However, the more immediate damage that he [the plaintiff] suffers is the annoyance and discomfort of living in inadequate housing." *Id.* at 167, 786 P.2d at 1018.

Here, Reed has not alleged that the Defendants intentionally harmed her or acted in bad faith while handling her divorce action. Further, because the direct result of the alleged malpractice is purely economic, the exception allowing recovery for emotional distress when the interest affected is a personal one is not applicable. Accordingly, Reed may not recover damages for emotional distress, and the Defendants are entitled to partial summary judgment on this issue.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES

█ On cross-appeal, the Defendants argue that the trial court erred in denying their requests for costs and attorneys' fees pursuant to Rule 11, Arizona Rules of Civil Procedure,[1] and A.R.S. sections 12–

---

1. Rule 11 is violated by the filing of a pleading

when the party or counsel knew, or should have

341.01(C)[2] and 12–349.[3] Defendants base their request for fees and costs on their argument that Reed's action was clearly time-barred and unsubstantiated from the outset. This premise cannot be reconciled with our conclusion that Reed's action was, in fact, timely filed.

Even if the statute of limitations had run, a trial court's denial of attorneys' fees is reviewed under an abuse of discretion standard (*Jones v. Queen Ins. Co.*, 76 Ariz. 212, 214, 262 P.2d 250, 251 (1953)), and the Defendants have not presented any evidence of such an abuse in this case. The trial court found that the statute of limitations question was a "debatable issue," and that each side had asserted a good faith, valid argument. We agree that because the statutes and procedural rule relied on by the Defendants only authorize the award of fees where the argument asserted was groundless and lacking in good faith, the trial court properly denied the Defendants' fee request.

## CONCLUSION

The trial court erred in finding Reed's action time-barred. The Defendants' remaining claims for summary judgment lack merit, except that the Defendants are entitled to partial summary judgment on Reed's claim for damages for emotional distress. On cross-appeal, the trial court's decision denying Defendants' application for fees and costs is affirmed. This case is reversed and remanded for further proceedings consistent with this opinion.

NOYES, P.J., and GARBARINO, J., concur.

known by such investigation of fact and law as was reasonable and feasible under all the circumstances, that the claim or defense was insubstantial, groundless, frivolous, or otherwise unjustified. It is also violated by the filing of pleadings for an improper purpose such as those intended to harass, coerce, extort, or delay.

*Boone v. Superior Court*, 145 Ariz. 235, 241–42, 700 P.2d 1335, 1341–42 (1985).

**2.** A.R.S. § 12–341.01(C) provides:

Reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith.

**3.** A.R.S. § 12–349 provides:

Except as otherwise provided by and not inconsistent with another statute ... the court shall assess reasonable attorney's fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars ... if the attorney or party ...

   **1. Brings or defends a claim without substantial justification.**

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.