222 P.3d 272

David KAUFMAN, Plaintiff/Appellant,

v.

William LANGHOFER, D.V.M.; and
Scottsdale Veterinary Clinic,
Defendants/Appellees.

No. 1 CA–CV 08–0655.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 22, 2009.

See also 2009 WL 4981190.

Law Office of Blake D. Gunn By Blake D. Gunn, Mesa, Attorneys for Plaintiff/Appellant.

Beaugureau Hancock Stoll & Schwartz PC By David L. Stoll and Terrance L. Simms and W. Reed Campbell, Phoenix, Attorneys for Defendants/Appellees.

Benavidez Law Group, P.C. By Christopher B. Wencker, Tucson, Attorneys for Amici Curiae Animal Defense League of Arizona, PETA Foundation, and Animal Protection and Rescue League.

Jennings Strouss & Salmon PLC By John J. Egbert, Phoenix, and Shook, Hardy & Bacon, LLP By Victor E. Schwartz and Phil Goldberg, Washington, DC, Attorneys for Amici Curiae Arizona Veterinary Medical Association, Animal Health Institute, American Animal Hospital Association, American Kennel Club, American Pet Products Association, American Veterinary Medical Association, Cat Fanciers' Association, and Pet Industry Joint Advisory Council.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of a veterinary malpractice action filed by plaintiff/appellant David Kaufman ("Kaufman") against defendants/appellees, William Langhofer, DVM, and Scottsdale Veterinary Clinic (collectively, "Dr. Langhofer") over the death of Salty, Kaufman's scarlet macaw. The principal issue on appeal is whether a pet owner is entitled to recover emotional distress and loss of companionship damages over the death of his or her pet. We hold such damages are not recoverable under Arizona law.[1]

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Kaufman purchased Salty in late 1996, and by all accounts Salty was intelligent, affectionate, and playful. Kaufman considered Salty his companion; she accompanied him to work, engaged with customers in Kaufman's business, and participated in family holidays. On May 1, 2005, a bird breeder diagnosed Salty with a cloacal prolapse.[2] Kaufman brought Salty to Dr. Langhofer on May 5, 2005. After multiple consultations, Dr. Langhofer performed two operations, which cured Salty's cloacal prolapse but left her with a uterine prolapse. Salty never fully recovered from the second operation, began to suffer respiratory distress, and died on June 21, 2005.

¶ 3 Kaufman sued Dr. Langhofer and Scottsdale Veterinary Clinic and alleged claims of professional negligence, wrongful death, negligent misrepresentation, and damage to and destruction of personal property.[3] Kaufman sought a variety of "special damages," as follows:

(a) the special damages of severe emotional distress and/or emotional pain and suffering;

(b) the special damages of emotional distress and/or emotional pain and suffering;

(c) the special damages of loss of companionship;

(d) the special damages of loss of society;

(e) the special damages of the loss of Salty;

(f) her fair market value for her species and age;

(g) veterinary medical expenses made in his effort to provide her with that degree

---

1. In a separate memorandum decision, *Kaufman v. Langhofer*, 1 CA–CV 08–0655, 2009 WL 4980337 (Ariz.App. Dec. 22, 2009), filed simultaneously with this opinion, we address the other arguments Kaufman has raised on appeal. *See* Ariz. R. Sup.Ct. 111(h) and ARCAP 28(g).

2. A condition by which an internal sac, used primarily for storing bodily waste, is forced out of the body.

3. Kaufman also sued another animal hospital. The jury returned a verdict in favor of this animal hospital, and it is not a party to this appeal.

of veterinary care, skill and learning expected of a reasonable, prudent veterinarian, acting in the same or similar circumstances;

(h) other pecuniary loss and damages at law; all for which he prays, in addition to pre-judgment interest, post-judgment interest, and costs of this action.

¶ 4 Dr. Langhofer moved to dismiss special damages (a) through (e) ("emotional distress damage claims") asserting pets were personal property under Arizona law and "one can not recover emotional distress or other special damages as a result of an injury to personal property." After briefing, the superior court granted Dr. Langhofer's motion. Concluding "Arizona law does not provide for the types of 'loss of relationship' damages Plaintiff seeks," the court dismissed Kaufman's emotional distress damage claims.

¶ 5 The court's ruling did not eliminate, however, Kaufman's special damage claims (f) through (h), that is, his claims for Salty's fair market value, veterinary expenses and "other pecuniary loss and damages at law." Nevertheless, without objection by Kaufman, the court instructed the jury his damages were "limited to the diminished or lost value, if any, of his bird. In determining reasonable compensation for property lost or destroyed, that amount is the fair market value of such property at the time of its loss or destruction."

¶ 6 The jury allocated fault, 30% to Dr. Langhofer and 70% to Kaufman and awarded Kaufman no damages.[4] The court subsequently entered a judgment consistent with the jury's verdict and denied Kaufman's application for costs. Kaufman timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) and –2101(B) (2003).

## DISCUSSION

¶ 7 Kaufman first argues that under existing Arizona law the superior court im-

properly precluded his emotional distress damage claims. Alternatively, he argues we should "expand" Arizona common law to allow a pet owner to recover emotional distress damages and damages for loss of companionship in a veterinarian malpractice action. Because these arguments raise questions of law, our review is de novo. *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcont'l Ins. Co.,* 218 Ariz. 13, 19, ¶ 19, 178 P.3d 485, 491 (App.2008).

## I. Emotional Distress Damages for Negligent Injury to or Death of a Pet

¶ 8 The majority of jurisdictions in the United States classify pets as personal property. *See Harabes v. Barkery,* 348 N.J.Super. 366, 791 A.2d 1142, 1144 (Law Div.2001) (citing cases); Margit Livingston, *The Calculus of Animal Valuation: Crafting a Viable Remedy,* 82 Neb. L.Rev. 783, 787–803 (2004) (citing cases); Robin C. Miller, *Damages for killing or injuring dog,* 61 A.L.R. 5th 635, § 3[a] (1998 & Supp.2009) (citing cases). Indeed, the "common law did not consider pets to be property since they were kept merely for pleasure, not for food or work." Peter Barton & Frances Hill, *How Much Will You Receive in Damages from the Negligent or Intentional Killing of Your Pet Dog or Cat?,* 34 N.Y.L. Sch. L.Rev. 411, 411 n. 3 (1989).

¶ 9 The majority of states also limit recovery for negligent injury to or death of a pet to the animal's fair market value and bar a plaintiff pet owner from recovering emotional distress damages. *See* Rebecca J. Huss, *Valuation in Veterinary Malpractice,* 35 Loy. U. Chi. L.J. 479, 514 (2004) (citing cases); William C. Root, *"Man's Best Friend": Property or Family Member? An Examination of the Legal Classification of Companion Animals and its Impact on Damages Recoverable for their Wrongful Death or Injury,* 47 Vill. L.Rev. 423, 430–31 (2002); Victor E. Schwartz & Emily J. Laird, *Noneconomic Damages in Pet Litigation: The Serious Need to Preserve a Rational Rule,*

---

4. At trial, Kaufman presented expert testimony Salty died of an undiagnosed and untreated cardiac disease (microcardia, a small heart) and Dr. Langhofer's failure to diagnose and treat her cardiac condition was a significant contributing factor to her death. On cross-examination, Kaufman's damage expert acknowledged a macaw suffering from a life threatening condition would have no market value.

33 Pepp. L.Rev. 227, 235–37 (2006) (citing cases).

■ ¶ 10 Arizona law is consistent with the majority position classifying animals as personal property and limiting damages for their negligent injury or death to their fair market value. *S.A. Gerrard Co. v. Fricker*, 42 Ariz. 503, 508–10, 27 P.2d 678, 680–81 (1933) (damage rule for destruction of bees "must be the one ordinarily applied for the destruction of or injury to personal property," the "true measure of [which] is the difference between the market value of the colonies at the time they were damaged and their value after they were rebuilt, together with the reasonable expenses incurred by plaintiff in an effort to mitigate ..."); *Roman v. Carroll*, 127 Ariz. 398, 399, 621 P.2d 307, 308 (App.1980) ("[a] dog, however, is personal property"); *see also* A.R.S. § 1–215(30) (Supp.2009) [5] (" '[p]ersonal property' includes money, goods, chattels, dogs"); *State v. Hernandez*, 121 Ariz. 544, 544, 592 P.2d 378, 378 (App.1979) (under statutory definition of personal property, dog may be subject of larceny conviction).

¶ 11 Kaufman and amici [6] argue the superior court misapplied Arizona law because the Arizona authorities principally relied on by the superior court in disallowing his emotional distress damage claims, *S.A. Gerrard* and *Roman*, did not address the precise question presented here—whether a pet owner may be compensated for his or her emotional distress when his or her pet is negligently injured or killed.[7] Relying on *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376 (App.1984); *Thomas v. Gou-*

*dreault*, 163 Ariz. 159, 786 P.2d 1010 (App. 1989); and *Jeter v. Mayo Clinic Arizona*, 211 Ariz. 386, 121 P.3d 1256 (App.2005), Kaufman and amici argue even if pets are considered personal property, these cases recognize a property owner may recover emotional distress damages when his or her property is negligently damaged or destroyed. The fact patterns and reasoning of these cases, however, are not analogous to the situation here and do not support Kaufman's argument he was entitled to recover emotional distress damages from Salty's death.

¶ 12 In *Farr*, we recognized a plaintiff could recover emotional distress damages in an action against an insurer for breach of the implied covenant of good faith and fair dealing in the administration of an insurance claim. 145 Ariz. at 7, 699 P.2d at 382. Relying on case law from California, we held once a plaintiff has proven a loss of property in such a case, he or she can also recover damages for emotional distress because "[m]ental distress is compensable as an aggravation of the financial damages, [but] not as a separate cause of action." *Id.* (quoting *Richardson v. Allstate Ins. Co.*, 117 Cal. App.3d 8, 172 Cal.Rptr. 423, 426 (1981)).

¶ 13 In *Thomas*, we held a tenant who is not provided necessary services and maintenance of leased premises as required under the Arizona Residential Landlord and Tenant Act, A.R.S. §§ 33–1301 to –1381 (2007 & Supp.2009), could recover emotional distress damages even if the landlord had not committed a "culpable" violation of the Act. 163 Ariz. at 167, 786 P.2d at 1018. In so holding, we explained when a tenant is not provided

5.  Although certain statutes cited in this opinion were amended after Dr. Langhofer's treatment of Salty, the revisions are immaterial. Thus, we cite to the current version of these statutes.

6.  The Animal Defense League of Arizona, the PETA Foundation, and the Animal Protection and Rescue League.

7.  In *S.A. Gerrard*, plaintiff operated a commercial apiary and sued to recover damages when its bees were negligently destroyed by a crop duster hired by defendant. 42 Ariz. at 505, 27 P.2d at 679. Given the facts in *S.A. Gerrard*, we agree with Kaufman that case is factually distinguishable from the situation presented here.

   *Roman*, however, is closer to the case here. In *Roman*, the issue was whether the plaintiff was

entitled to damages under the Arizona Supreme Court's decision in *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979), for the negligent infliction of emotional distress when she saw another dog "dismember" her pet poodle. In *Keck*, the court held a person may recover damages for the negligent infliction of emotional distress from witnessing an injury to a person with whom the plaintiff has a close personal relationship as long as the shock or mental anguish manifested as a physical injury. The *Roman* court held the plaintiff could not recover damages for the negligent infliction of emotional distress from witnessing injury to her pet because a pet is not a person but mere property.

necessary services and maintenance, the tenant suffers property damage because the value of the leasehold is decreased by the absence of such services and maintenance. *Id.* We also recognized the "more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing." *Id.*

¶ 14 And in *Jeter,* applying the Restatement (Second) of Torts § 323 (1965), we recognized a cause of action for the loss or destruction of plaintiffs' "pre-embryos," which we explained were fertilized human eggs. 211 Ariz. at 388 n. 1, 402, ¶¶ 1, 70, 121 P.3d at 1258 n. 1, 1272. Subject to certain requirements, that section of the Restatement imposes liability on a person "who undertakes ... to render services to another which [the person] should recognize as necessary for the protection of the other's person or things." Restatement (Second) of Torts § 323 (1965). In discussing whether, under § 323, the plaintiffs could seek emotional distress damages, we noted that under Arizona law, a party may recover damages "for emotional distress arising from the tortious loss of property if the emotional distress is unrelated to the pecuniary loss." *Jeter,* 211 Ariz. at 403, ¶ 73, 121 P.3d at 1273 (citing *Reed v. Mitchell & Timbanard, P.C.,* 183 Ariz. 313, 318–19, 903 P.2d 621, 626–27 (App.1995); *Thomas,* 163 Ariz. at 165–67, 786 P.2d at 1016–18).

¶ 15 Although *Farr, Thomas,* and *Jeter* recognized a party may recover damages for emotional distress arising out of the tortious loss of property, these cases share a common nucleus—the tortious act directly harmed the plaintiff and affected or burdened a personal, as opposed to an economic or other interest belonging to the plaintiff.

¶ 16 We recognized this precise point in *Reed,* a legal malpractice case cited in *Jeter.* There, we held a plaintiff in a "simple" legal malpractice action (that is, one in which the attorney's conduct did not involve fraud, intentional conduct, a willful fiduciary breach, or physical contact) could not recover damages for emotional distress when the attorney's negligence only damaged the plaintiff's economic interest and not any personal interest such as the plaintiff's liberty or a family

relationship. *Reed,* 183 Ariz. at 318–19, 903 P.2d at 626–27. In so holding, we rejected the plaintiff's reliance on *Farr,* noting the tort of bad faith is still "an intentional one—the defendant insurer must either have knowledge of, or reckless disregard for, the lack of a reasonable basis for denying an insurance claim." *Id.* at 319, 903 P.2d at 627. We also rejected the plaintiff's reliance on *Thomas,* explaining the basis for our holding in *Thomas* was "akin to the principle that damages for emotional distress are recoverable where the injury is personal, as opposed to economic." *Id.*

█ ¶ 17 We acknowledge the emotional distress Kaufman suffered over Salty's death. But Dr. Langhofer's negligence did not directly harm Kaufman in that it did not affect or burden a personal right or interest belonging to him.

¶ 18 In *McMahon v. Craig,* 97 Cal.Rptr.3d 555 (Ct.App.2009), the court addressed whether a veterinarian's malpractice harmed the pet owner in such a way as to allow the owner to recover damages for the emotional distress she had suffered over the death of her pet. The court distinguished, as we have, between an injury that can give rise to such damages from one that cannot. *Id.* at 563. Although speaking in terms of duty, the court's reasoning is similar to ours here. The court explained:

> In support of her claim, McMahon cites a series of cases in which a duty arose by virtue of a doctor-patient relationship. But although a veterinarian is hired by the owner of a pet, the veterinarian's medical care is directed only to the pet. Thus, a veterinarian's malpractice does not directly harm the owner in a manner creating liability for emotional distress.

*Id.* at 561.

¶ 19 Accordingly, we hold the Arizona case law relied on by Kaufman and amici that recognizes a party can, under certain circumstances, recover damages for emotional distress arising from the tortious loss of property is inapplicable here.

## II. Value to Owner

■ ¶ 20 Kaufman and amici also argue the superior court misapplied Arizona law in restricting damages to Salty's fair market value because it should have allowed the jury to consider Kaufman's damages under what is known as the "value to owner" theory. Under this theory, if "goods have no market value, their actual worth to the owner is the test, and when they have but little or no market value, and are of special value to the owner, he may recover that." *Jones v. Stanley,* 27 Ariz. 381, 385, 233 P. 598, 599 (1925); *see also Devine v. Buckler,* 124 Ariz. 286, 287, 603 P.2d 557, 558 (App.1979). Accordingly, because Salty had no fair market value, *see supra* note 4, Kaufman and amici argue the superior court should have allowed the jury to consider Salty's actual value to him, which would have allowed him to recover the sentimental value he attached to Salty.

■ ¶ 21 Kaufman did not pursue this theory at trial, however. Thus, we need not decide whether he was entitled to recover damages under a value to owner theory [8] or whether, under this theory, a pet owner may recover for the sentimental value of his or her pet.[9] As discussed above, although the superior court dismissed Kaufman's emotional distress damage claims before trial, it did not dismiss Kaufman's remaining special damage claims. Even assuming Kaufman's remaining special damage claims can be read as including a request for value to owner damages, Kaufman did not identify that theory as an issue to be tried in the parties' joint pretrial statement and, indeed, never requested the court to instruct the jury on that theory. Further, although Kaufman preserved his objection to the court's pretrial dismissal of his emotional distress damage claims, he raised no other objection to the court's instruction limiting his damages to Salty's fair market value. Having failed to raise the value to owner damage theory at trial, Kaufman may not raise it here. *Hunter Contr. Co. v. Sanner Contr. Co.,* 16 Ariz. App. 239, 244–45, 492 P.2d 735, 740–41 (1972) (appellate court refused to give its opinion as to applicability of legal theory as applied to the facts of case tried before jury because appellant failed to raise theory during trial).[10]

## III. Expansion of Arizona Common Law to Allow Recovery of Emotional Distress and Loss of Companionship Damages

¶ 22 Finally, Kaufman and amici argue this court should "expand" Arizona common law

8. Several jurisdictions have relied on this theory to assess the damages resulting from injury to or death of a pet when the pet has little or no market value. *See generally, Mitchell v. Heinrichs,* 27 P.3d 309, 314 (Alaska 2001) (under value to owner theory pet owner may seek reasonable replacement costs—such as costs of purchasing a puppy of the same breed, immunization, neutering, and comparable training); *McDonald v. Ohio State Univ. Veterinary Hosp.,* 67 Ohio Misc.2d 40, 644 N.E.2d 750, 752 (Ct.Cl. 1994) (value to owner based on training, personal security, and stud fees); *Sherman v. Kissinger,* 146 Wash.App. 855, 195 P.3d 539, 549 (2008) (material issues of fact about the measure and amount of damages, including the possibility of a value to owner recovery, precluded summary judgment limiting owner's damages to the market value of dog).

9. The majority of courts that apply the value to owner measure of damages for an injured or killed pet decline to include the pet's sentimental value to its owner (the element of damages most similar to the emotional distress damages Kaufman seeks). *See Stephens v. Target Corp.,* 482 F.Supp.2d 1234, 1236 (W.D.Wash.2007) (value to owner theory is proper recovery method for death of a family pet, but no sentimental element

is allowed); *McMahon,* 97 Cal.Rptr.3d at 566–68 (property's unique economic value does not include sentimental or emotional value); *Wilcox v. Butt's Drug Stores, Inc.,* 38 N.M. 502, 35 P.2d 978, 979 (1934) (value to owner is proper measure of damages for show dog, and include dog's "special value" to the owner, including "its qualities, characteristics, and pedigree" but "damages for sentimental value are not recoverable"); Restatement (Second) of Torts § 911 cmt. e (1979) ("damages cannot be based on sentimental value"). *But see Jankoski v. Preiser Animal Hosp. Ltd.,* 157 Ill.App.3d 818, 110 Ill.Dec. 53, 510 N.E.2d 1084, 1087 (1987) (pet's value to its owner may include a severely circumscribed element of sentimental value); *Brousseau v. Rosenthal,* 110 Misc.2d 1054, 443 N.Y.S.2d 285, 286–87 (Civ.Ct.1980) (measure of damages for loss of pet is actual value to owner; ·elements for loss of companionship and protection included).

10. We also decline to consider amici's argument Dr. Langhofer should be estopped from claiming pet owners are limited to damages equal to their animals' fair market value, because Kaufman did not raise this issue. *See Ruiz v. Hull,* 191 Ariz. 441, 446, ¶ 15, 957 P.2d 984, 989 (1998) ("we base our opinion solely on legal issues advanced by the parties themselves").

to allow recovery of emotional distress and loss of companionship damages when a pet is negligently injured or killed. Kaufman points out pets occupy a special place in the lives of many people and are frequently viewed as family members.[11] Thus, he argues their "human guardians" should be able to recover emotional distress as well as loss of companionship damages that would mirror damages a human plaintiff could recover under a loss of consortium theory. *See generally Barnes v. Outlaw*, 192 Ariz. 283, 286, 964 P.2d 484, 487 (1998) (damages for loss of consortium is to compensate for loss of love, affection, protection, support, services, companionship, care, society, and in marital relationship, sexual relations).

¶ 23 Despite the importance of pets in American life, most courts have refused to extend the common law to allow for the recovery of emotional distress or loss of companionship damages when a pet is negligently injured or killed. The reasons vary. For example, some courts have concluded such an extension would be difficult to limit according to a rational rule.

¶ 24 Humans form bonds with a variety of animals that can be called their pets. *See Rabideau v. City of Racine*, 243 Wis.2d 486, 627 N.W.2d 795, 802 (2001). As a California appellate court noted, "[b]ecause humans are not related to pets, limits cannot be based on degree of consanguinity.... '[I]t would be difficult to cogently identify the class of companion animals because the human capacity to form an emotional bond extends to an enormous array of living creatures.' " *McMahon*, 97 Cal.Rptr.3d at 564 (quoting *Rabideau*, 627 N.W.2d at 802).

¶ 25 Other courts have refused to award such damages because they believe there would be substantial "difficulty in quantifying the emotional value of a companion pet and the risk that a negligent tortfeasor will be exposed to extraordinary and unrealistic

damage claims." *Harabes*, 791 A.2d at 1145 (referencing *Nichols v. Sukaro*, 555 N.W.2d 689, 690 (Iowa 1996), where plaintiffs' expert testified the market value of their dog was $100–$200, and "if a pet is thought of as a family member by its owners, its value is whatever the owner thinks it is"). Indeed, at trial Kaufman's valuation expert essentially acknowledged this difficulty. When asked about Salty's fair market value if healthy, the expert testified it was "like putting a price on—on your—on your child, trying to sell your child."

¶ 26 Relying on these and other similar considerations, most courts have rejected loss of companionship claims resulting from the loss of or injury to a pet. *See Gluckman v. Am. Airlines*, 844 F.Supp. 151, 158 (S.D.N.Y.1994) (no independent cause of action for loss of companionship of a pet); *Jankoski*, 110 Ill.Dec. 53, 510 N.E.2d at 1087 (no independent cause of action for loss of companionship of a pet); *Koester v. VCA Animal Hosp.*, 244 Mich.App. 173, 624 N.W.2d 209, 211 (2000) (no Michigan precedent permitting plaintiffs to recover emotional injuries, including loss of companionship, suffered at the death of their dog); *Harabes*, 791 A.2d at 1146 (because of public policy concerns, plaintiffs cannot obtain noneconomic damages, including loss of companionship, from defendants' alleged negligence); *Lewis v. Di Donna*, 294 A.D.2d 799, 743 N.Y.S.2d 186, 189 (2002) ("since loss of companionship [stemming from the death of a pet] is not a cognizable cause of action in this State, it should not be recognized as a factor of damages").

¶ 27 Although we acknowledge the various reasons identified by other courts in disallowing emotional distress and loss of companionship damages, we conclude these damages are not available in Arizona in a case such as this for reasons grounded on our state's approach to such damages. Ex-

---

11. In support of Kaufman's argument, amici note that according to a recent survey 71% of dog owners and 64% of cat owners consider their pets like a child or family member. This survey does not stand alone and the importance of pets in our society is well recognized. *See generally* Christopher Green, *The Future of Veterinary Malpractice Liability in the Care of Compan-* *ion Animals*, 10 Animal L. 163, 170 (2004) (in 2001, consumers in the United States spent more than $19 billion on veterinary care); Rebecca J. Huss, *Valuation in Veterinary Malpractice*, 35 Loy. U. Chi. L.J. 479 (2004) (discussing changing nature of relationship of humans to companion animals and economic significance of changing relationship).

panding Arizona common law to allow a pet owner to recover emotional distress or loss of companionship damages would be inappropriate as it would offer broader compensation for the loss of a pet than is currently available in this state for the loss of a person.

¶ 28 In Arizona, a plaintiff in a negligent infliction of emotional distress action must witness an injury to a closely related person, suffer mental anguish manifested as physical injury, and be within the zone of danger. *Pierce v. Casas Adobes Baptist Church,* 162 Ariz. 269, 272, 782 P.2d 1162, 1165 (1989); *State Farm Mut. Auto. Ins. v. Connolly,* 212 Ariz. 417, 423, ¶ 23, 132 P.3d 1197, 1203 (App.2006). A cause of action for loss of consortium is also limited to spouses, parents, and children. *Barnes,* 192 Ariz. at 286, 964 P.2d at 487 (spouses); *Villareal v. State Dep't of Transp.,* 160 Ariz. 474, 477, 774 P.2d 213, 216 (1989) (parents); *Frank v. Superior Court,* 150 Ariz. 228, 234, 722 P.2d 955, 961 (1986) (children). And, although under Arizona's Wrongful Death Act a plaintiff may recover his or her mental suffering and distress, such loss is limited to spouses, parents, and children of the decedent. A.R.S. § 12–612(A) (2003); *City of Tucson v. Wondergem,* 105 Ariz. 429, 433, 466 P.2d 383, 387 (1970) (interpreting Wrongful Death Act to allow damages for the anguish, sorrow, stress, mental suffering, pain, and shock resulting from the decedent's death).

¶ 29 We recognize the reality of a pet owner's grief when his or her pet is negligently injured or killed. Nevertheless, we do not believe it reasonable to expand tort law to allow a pet owner to recover emotional distress or loss of companionship damages when such damages cannot be recovered for the injury to or loss of close human friends, siblings, and nonnuclear family members such as grandparents, grandchildren, nieces, nephews, aunts, and uncles.

¶ 30 We are not alone in concluding it would be unreasonable for the law to offer broader compensation for the loss of a pet than for the loss of a person. In *Goodby v. Vetpharm, Inc.,* 974 A.2d 1269, 1271 (Vt. 2009), the Vermont Supreme Court held plaintiffs in a veterinary malpractice action were not entitled to noneconomic damages. After explaining the plaintiffs were requesting "a judicial expansion of law to recover for loss of a pet [when] the law does not allow for loss of a broad variety of critically loved human beings," *id.* at 1273, ¶ 10, the court stated:

> It is beyond dispute that our bond with pets often, if not usually, transcends their value to strangers in the marketplace. Experience tells us that emotional attachments can also attend our associations with farm and work animals. Plaintiffs fail to demonstrate a compelling reason why, as a matter of public policy, the law should offer broader compensation for the loss of a pet than would be available for the loss of a friend, relative, work animal, heirloom, or memento—all of which can be prized beyond measure, but for which this state's law does not recognize recovery for sentimental loss. We are not persuaded that a special exception to recover noneconomic damages for the loss of companion animals occasioned by negligence, damages not entirely distinct from human grief and anguish attending the negligent destruction of other personally important property, both sentient and nonsentient, should be undertaken outside of the legislative arena.

*Id.* at 1274, ¶ 11.[12]

¶ 31 We agree with the reasoning of the Vermont Supreme Court and adopt it here. Thus, we are unwilling to expand Arizona common law to allow a plaintiff to recover emotional distress or loss of companionship damages for a pet negligently injured or killed.[13]

---

**12.** *See also McMahon,* 97 Cal.Rptr.3d at 568 (California law does not allow parents to recover for loss of companionship for their children, so no loss of companionship damages available for pet owners); *Krasnecky v. Meffen,* 56 Mass.App. Ct. 418, 777 N.E.2d 1286, 1289–90 (2002) (loss of companionship and society for loss of a sheep falls within loss of consortium, which limits recovery to death of persons); *Daughen v. Fox,* 1

Pa. D. & C.4th 422, 428 (C.P.1987) (loss of dog's companionship akin to loss of consortium claim, which can only be maintained by spouse of injured *person* ).

**13.** The scope of our decision is narrow; we deal only with the measure of damages for loss of a pet negligently injured or killed. Several states allow damages for the intentional infliction of

## CONCLUSION

¶ 32 For the foregoing reasons, we affirm the judgment of the superior court. As the successful party on appeal, we award Dr. Langhofer his costs, contingent upon his compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12–342 (2003).

CONCURRING: SHELDON H. WEISBERG and MARGARET H. DOWNIE, Judges.

emotional distress when a pet is injured or killed through intentional, willful, malicious, or reckless conduct. *Richardson v. Fairbanks North Star Borough*, 705 P.2d 454 (Alaska 1985); *La Porte v. Assoc. Indep., Inc.*, 163 So.2d 267 (Fla. 1964); *Gill v. Brown*, 107 Idaho 1137, 695 P.2d 1276 (Ct.App.1985); *Burgess v. Taylor*, 44 S.W.3d 806 (Ky.Ct.App.2001). Whether emotional dis-

tress damages are available when a pet is injured or killed as a consequence of such conduct is not an issue we decide today. Further, as we have discussed, Arizona law may allow a plaintiff to recover emotional distress damages when he or she sustains an economic loss involving fraud, intentional conduct, or a willful fiduciary breach. *See Reed*, 183 Ariz. at 319, 903 P.2d at 627.